155 N.J. Super. 358 (1978)
382 A.2d 946
MELINDA W. GILCHRIST, COMPLAINANT-RESPONDENT,
v.
THE BOARD OF EDUCATION OF THE BOROUGH OF HADDONFIELD, CAMDEN COUNTY, RESPONDENT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued November 21, 1977.
Decided January 17, 1978.
*360 Before Judges FRITZ, BOTTER and ARD.
Mr. Joseph F. Greene, Jr., argued the cause for complainant (Messrs. Brown, Connery, Kulp, Wille, Purnell & Green, attorneys).
Mr. Bertram P. Goltz, Jr., Deputy Attorney General, argued the cause for the respondent (Mr. William F. Hyland, Attorney General, attorney; Ms. Erminie Conley, Deputy Attorney General, of counsel).
The opinion of the court was delivered by ARD, J.A.D.
Complainant, a nontenured teacher, filed a verified complaint with the New Jersey Division on Civil Rights alleging that the Board of Education of the Borough of Haddonfield, Camden County (Board), "discriminated against her in that they denied her the opportunity to continue her employment because of her pregnancy." In answering, the Board asserted the defenses of lack of jurisdiction, absence of any substantive statutory violation and "business necessity."
The Board also filed a complaint in the Chancery Division of the Superior Court of New Jersey seeking to enjoin complainant and the New Jersey Division on Civil Rights from proceeding, on the grounds that the matter in dispute was a question arising under the school law and exclusively within the jurisdiction of the Commissioner of Education. Simultaneously with filing suit in Chancery, the Board also filed a petition of appeal with the Commissioner of Education of New Jersey naming complainant and requesting the Commissioner of Education to determine whether the facts of the matter constitute a wrongful denial of reemployment. *361 The parties entered into a stipulation of dismissal with respect to the Chancery action, and the Department of Education took the position that it would not move the matter because the Department's own rules prevented it from proceeding while a prior filing was pending before another administrative jurisdiction of the State Government.
After a hearing in the Division on Civil Rights the Director adopted the recommendations of the hearing examiner and found that the Board had discriminated against complainant on the basis of sex. The Board was ordered to (1) cease and desist from doing any act prohibited by N.J.S.A. 10:5-1 et seq.; (2) not maintain a written or unwritten employment policy or practice which excludes from employment applicants or employees because of pregnancy; (3) not discriminate between men and women with regard to medical, hospital, accident, life insurance or retirement benefits or any other term, condition or privilege of employment; (4) treat disabilities caused or contributed to by pregnancy, miscarriage, abortion, child birth and recovery therefrom as other temporary disabilities under any health or temporary disability insurance or sick leave plan available in connection with employment; (5) not present any proposal for negotiation with employee organizations which treat disabilities related to pregnancy differently from any other temporary disability; (6) not maintain or enforce any policy or practice for the removal of any tenured or nontenured teacher from her teaching duties which is based solely on the fact of pregnancy; (7) grant leaves of absence for medical reasons associated with pregnancy and birth on the same terms and conditions governing leaves of absence for other illnesses or medical disabilities; (8) made accumulated sick leave time available to teachers who suffer disability on account of pregnancy on the same terms as all other types of disability, and require the same type of physician's certificate for pregnancy as is required for other disabilities; (9) include male as well as female employees in any contract provision now in force which provides leave for child care; and *362 specifically: (a) credit complainant with 12 sick days and 3 personal days which would have accrued to her benefit during the 1975-76 school year, and (b) pay complainant back pay of $9,900 less the necessary amounts for state pension program and federal withholding, and, in addition, $400 as incidental compensatory damages for pain, suffering and humiliation; (10) offer complainant reinstatement to the first vacant full-time teaching position which is available for the 1976-77 school year, and (11) provide complainant with credit of two years of teaching towards tenure.
The Board appeals, urging the following:
(1) The Division on Civil Rights lacks jurisdiction over the complaint where the sole allegation is one of discrimination on the basis of the complainant's pregnancy;
(2) If sex discrimination is determined to include action by the Board because of pregnancy, a complaint of such discrimination does not fall within the jurisdiction of the Division on Civil Rights, and the exclusive jurisdiction is with the Commissioner of Education;
(3) The determination and order of the Director of the Division on Civil Rights should be reversed, and
(4) Even if a statutory violation were sustained, the complainant would not be entitled to compensatory damages or other relief granted because she was not prepared to resume her full-time position during the school year in question and because she did not attempt to fully mitigate damages.
There is little disagreement between the parties concerning the important facts of the case. Complainant began working for the Haddonfield School System in September 1973 and continued through two successive school years, terminating in June 1975. She became aware she was pregnant in February 1975, and upon a superior's inquiry in April 1975, advised the school authorities she expected to have the baby in late September or October 1975. She had already been informally advised that her contract was to be renewed although she had not yet been tendered a formal written agreement.
*363 Although she was told by the assistant superintendent "that there would be no problem" when she first advised him of her pregnancy, two days later the superintendent of schools stated that her contract would not be renewed because her absence the following school term would interfere with the Board's policy "promoting the continuance of education without interruption." It was made clear to her that the decision was because of her absence and not because of her teaching abilities.
Further evidence was adduced that this information caused her some emotional upset and physical discomfort.
There was also evidence that complainant had been absent for a period of over two weeks in a prior year without complaint from her superiors. This absence was occasioned by a back condition. It was demonstrated that each teacher receives 12 sick days and 3 personal days a year which are cumulative and may be utilized in the event of illness or disability. The complainant testified she would have had available to her in October 1975, the scheduled time for the delivery of her baby, a total of 16 days of permitted absence. It was her personal experience, as well as her observations of the experiences of others, that a prolonged absence because of sickness or disability, beyond the allotted leave time available to the individual, was handled by deducting the additional lost time from the employee's salary. This option was not afforded the complainant, and at the end of the 1974-75 school year she received a letter from the Board (marked Exhibit "B") advising her that her contract would not be renewed for the next school year because "the delivery by you of a child in October of 1975 will occasion an unwarranted interruption in the continuity of the children's classroom instruction. To the extent possible, the Board's policy is to minimize any interruption in classroom instruction, whatever the reason."
There was further testimony that complainant sought full-time employment in the school year 1975-76 without success. *364 Thereafter she was uninterested in full-time employment and is precluded from making any further lost wage claim.
No evidence was introduced by either side concerning the general policy of the Board with respect to predicted absences for any reason in the following contract year by nontenured teachers, male or female, except as stated in the aforementioned letter: "the Board's policy is to minimize any interruption in classroom instruction, whatever the reason." Mr. Stroup, the superintendent of schools at the time, did testify on cross-examination that he could not recall of a request for leave prior to a new school year by a nontenured teacher.
The threshold question of jurisdiction, i.e., whether the Commissioner of Education has exclusive jurisdiction, is difficult and complex. The Board's contention that the Division on Civil Rights was without jurisdiction in this matter cannot be dismissed in a cavalier fashion. In New York Bd. of Higher Ed. v. Carter, 14 N.Y.2d 138, 250 N.Y.S.2d 33, 199 N.E.2d 141 (1964), the Court of Appeals of New York, considering a substantially identical statute, held that the civil rights agency possesses concurrent jurisdiction with the Education Commissioner over civil rights matters. However, it was a 4-3 decision and the policy considerations suggested by Judge Dye in the dissenting opinion warrant mention, if only to demonstrate how near the scales are to equipoise.
Our State educational system has long enjoyed administrative independence conferred by the framers of the Constitution and legislative enactment. It is well that it should. No field of government is more important or more sensitive than the education of our children. New York has long enjoyed a justly deserved reputation of leadership in this field which obviously could only have been accomplished by the carefully worked out policy of reposing general management and supervision of the public school system in the Regents and the Commissioner of Education. The selection and promotion of teaching personnel is a specialized function which is peculiarly within the field of education. It is surrounded by many safeguards with emphasis on the applicant's academic qualifications, character and performance. The employment and promotion of persons *365 so accredited are nonetheless subject to constitutional and statutory interdictions against bias, one of which is that the Board may not even inquire into the religious affiliation of an applicant (Civil Rights Law, § 40-a). Both the framers of the Constitution and the State Legislature have made it manifestly clear that the school boards under the Regents and the Commissioner have full authority and all necessary power to deal with alleged discrimination in the educational system. To be sure, the authority and power conferred on the Commission in the field of employment is a broad one, but it does not follow that the Legislature thereby intended to limit, supersede or overlap the authority and powers theretofore conferred upon and possessed by the Board. To say that they so intended creates an administrative conflict that can only lead to confusion and uncertainty * * *. [14 N.Y.2d 138, 250 N.Y.S.2d at 45, 199 N.E.2d at 150]
On the other hand, our court in Hinfey v. Matawan Reg. Bd. of Ed., 147 N.J. Super. 201 (App. Div. 1977), certif. granted 74 N.J. 264 (1977), considered whether the enactment by the Legislature in 1973 of N.J.S.A. 18A:36-20 proscribing discrimination against pupils in a public school divested the Division on Civil Rights of its adjudicatory and enforcement function. It held that the later enactment "was merely to confirm the concurrent jurisdiction of the Commissioner without any abrogation or diminution of the continuing jurisdiction of the Division accorded by the Law Against Discrimination, N.J.S.A. 10:5-1 et seq." Hinfey, 147 N.J. Super. supra at 204.
In tracing the history of the legislation in question, the Hinfey court pointed out that the Division Against Discrimination was originally created within the State Department of Education and was subsequently transferred to the Department of Law and Public Safety, in the course of which it became the Division on Civil Rights and N.J.S.A. 10:5-1 et seq. Its supervisory authority was transferred from the Commissioner of Education to the Attorney General and his appointee, the Director of the Division on Civil Rights.
The Hinfey court found concurrent jurisdiction even though the statute in question was enacted subsequent to N.J.S.A. 10:5-1 et seq. In reviewing the statutory history, the court stated:
*366 * * * Accordingly, all parties concede, and quite properly so, that prior to the 1973 enactment of N.J.S.A. 18A:36-20 the Commissioner and the Division had concurrent quasi-judicial jurisdiction over all alleged acts of discrimination committed by the public schools, whether as employers or as the offerors of a public accommodation. It is also quite properly conceded here that both agencies continue to have concurrent jurisdiction in respect of alleged employment discrimination. * * * [at 209]
Although we recognize the value of the administrative expertise of the Commissioner of Education, under the circumstances of this case we also discern the utility of the Director's expertise in the area of civil rights, and it appears evident to us that, on the balance, the argument for concurrent jurisdiction outweighs the argument to the contrary. We are satisfied the Division on Civil Rights has concurrent jurisdiction.
The substantive question before us is whether the failure to renew the contract of a nontenured teacher who predicts a period of absence in the forthcoming contract year because of pregnancy constitutes gender-based discrimination, in violation of N.J.S.A. 10:5-4 and N.J.S.A. 10:5-12(a).
N.J.S.A. 10:5-4 provides:
All persons shall have the opportunity to obtain employment, * * * without discrimination because of * * * sex, subject only to conditions and limitations applicable alike to all persons. * * *
N.J.S.A. 10:5-12(a) provides that it shall be an unlawful employment practice or discrimination:
For an employer, because of the * * * sex of any individual, * * * to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment * * *
Although "discrimination" is not defined in the statute, it is readily discernible. "The essence of discrimination is, of course, disparate treatment." Peper v. Princeton *367 Univ. Bd. of Trustees, 151 N.J. Super. 15, 24 (App. Div. 1977), certif. granted 75 N.J. 24 (1977).
In considering the question of whether the record supports the finding of discrimination, it should be stated at the outset that we recognize that a nontenured teacher is still entitled to have the Board enunciate reasons for nonretention. Donaldson v. Bd. of Ed. of No. Wildwood, 65 N.J. 236 (1974). Moreover, while the Board has great latitude in determining fitness for permanent employment "[i]t is clear that public employment may not be refused upon a basis which would violate any express statutory or constitutional policy. A simple example would be discrimination for race or religion." Zimmerman v. Bd. of Ed. of Newark, 38 N.J. 65, 80 (1962), (Weintraub, C.J., concurring), cert. den. 371 U.S. 956, 83 S.Ct. 508, 9 L.Ed.2d 502 (1963). Furthermore, we recognize the illegality of using pregnancy as a pretext to effect an invidious discrimination against an individual woman or women in general. See General Electric Co. v. Gilbert, 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976).
In the instant case the hearing examiner's findings of fact and conclusions of law, which were adopted by the Director, found that the Board's action in refusing to renew the complainant "solely because of her pregnancy" constituted a discriminatory act in violation of N.J.S.A. 10:5-12(a) and 10:5-4. Specifically, it was determined that the policy of the Board in denying plaintiff a new contract because of pregnancy had the effect of discriminating against women. Additionally, it was determined that "[t]he application of the alleged policy with regard to subsequent years absences for any reason was a pretext for a policy of denying any leaves whatsoever to untenured teachers on account of pregnancy of any length."
It is axiomatic that an administrative agency's factual findings will not be disturbed on appeal if they could reasonably have been reached on sufficient credible evidence present in the record considering the proofs as a whole and with *368 due regard to the opportunity of the one who heard the witnesses to judge their credibility, as well as the agency's expertise where this is a pertinent factor. Mayflower Securities v. Bureau of Securities, 64 N.J. 85. 92-93 (1973); Close v. Kordulak Bros., 44 N.J. 589, 590 (1965). It is by this standard that the factual findings must be examined.
We would have no difficulty in sustaining a determination of discrimination if the record supports a finding that pregnancy has been singled out by the Board as the only kind of temporary disability which would lead to nonrenewal of a nontenured teacher's contract. It seems to us this would constitute a gender-based discrimination which would be a violation of N.J.S.A. 10:5-12(a) and N.J.S.A. 10:5-4. See Cleveland Bd. of Ed. v. LaFleur, 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974). Our difficulty stems from our failure to find a basis for the hearing examiner's conclusion that no other temporary disability automatically results in nonrenewal.
We deem it a perfectly rational goal for the Board to be vitally interested in avoiding, where possible, the interruptions in the continuity of classroom instruction that would arise from teachers' absences. Moreover, we deem it to be nondiscriminatory treatment, if it be the Board's policy, not to renew the contract of any nontenured teacher, male or female, who gives the Board advance knowledge of an anticipated absence of substantial duration in the coming school year for any reason. The avoidance of a detrimental interruption in the continuity of classroom instruction is an admirable goal whether the interruption be caused by pregnancy, laminectomy, orchiectomy, prostatectomy or any non-medical reason. Such a policy must be considered evenhanded, and obviously it is not subject to the claim of disparate treatment.
Additionally, it is unproductive to compare complainant's request of the Board with other teacher absences which occur in the same school year or involve tenured teachers with greater rights. We are dealing with the Board's advance *369 knowledge of an anticipated absence which was received from a non-tenured teacher prior to the contract year in which it was to occur.
The record below is barren of factual data upon which a factfinder can make a determination of discrimination. There is simply no evidence to base a determination that the only temporary disability or absence being singled out by the Board was pregnancy, or, as a matter of fact, that any class, including gender-based classifications, was disadvantaged by the policy of the Board. The testimony concerning the absences of other teachers should not have been used as a basis for a determination of disparate treatment toward complainant. In those cases the teachers' absences were brought to the attention of the Board within the academic year in which the absences occurred. It was a fait accompli; the Board had no opportunity to avoid interruption of the continuity of the classroom instruction, and the affected teacher was guided and governed by the existent agreement concerning sick days and personal days. An absence mandated by physical infirmity occurring within the academic year is not to be compared with advice of a proposed absence in the next academic year. More importantly, the hearing examiner erroneously concluded that there was evidence that the Board would grant leave for a subsequent school year for a reason other than pregnancy. In the findings of the hearing officer, there is the following:
* * * However, there was some evidence that the supposed policy regarding leaves for a subsequent school year was not enforced as to absences for reasons other than pregnancy. Mrs. Gilchrist's unrebutted testimony was that in the Spring of 1974, she informed the respondent that she would be absent in the following September for a back problem and she was still granted her new contract. Thus, it does not appear that there was any written or enforced policy of barring leaves for subsequent school years. Such a policy first surfaced when the complainant was denied rehiring because of the pregnancy leave which she sought. There is no question from the evidence as a whole and the testimony and credibility of the witnesses that if the complainant had sought rehiring with the condition that she be permitted several weeks for an illness, operation *370 or other medical condition other than pregnancy, it would have been granted. * * * It defies belief that a teacher seeking a leave for an operation or other non-pregnancy physical problem in a future school year would be automatically fired regardless of the length of that leave. * * *
The essential conclusions incorporated in the findings are not based on the evidence adduced. The reference to complainant's prior back problem is inaccurate. She did not testify that in the Spring of 1974 she informed the Board that she would be absent in the following September for a back problem. The record indicates she was absent in September of 1974 for a few days over two weeks because of a back condition. She did not notify the Board of her absence until she had the condition in September. This becomes important inasmuch since it belies the examiner's finding that the Board permitted anticipated absence prior to the academic year in which the absence was to occur for conditions other than pregnancy. Thus, the very linchpin of the hearing examiner's determination was erroneous.
Additionally, it is to be observed that the hearing officer expressed his incredulity on the basis of an improbable "firing." We discern a substantial difference between a discharge and a refusal to renew a contract in terms of the policy considerations here under review.
Also there is no basis in the record to warrant a conclusion that any other nontenured teacher in similar circumstances would be given leave for a physical condition other than pregnancy or for any other reason. The hearing examiner stated:
* * * There is no question from the evidence as a whole and the testimony and credibility of the witnesses that if the complainant sought rehiring with the condition that she be permitted several weeks for an illness, operation or other medical condition other than pregnancy, it would have been granted. * * *
This conclusion of fact is not supported by the evidence in the case. If anything, it is contradictory to the testimony *371 of the present and former superintendent of the Board's school district. Their testimony would warrant a finding that the principle of continuity would control regardless of the bases for the anticipated absence.
The examiner's errors are pervasive, although unquestionably made in good faith. The characterization of the Board's unwillingness to renew complainant's contract as a "firing" is significant only in the limited sense to which we have adverted above. Moreover, the record does not support a finding that complainant would have taught the entire year with the exception of a two-week interruption to have the baby. Her testimony was to the effect that her doctor could not say how long she would be out, and there was no evidence as to when she was available for full-time employment. If anything, the record would suggest complainant's unavailability for full-time work based on her testimony that she was now seeking "part-time" employment.
Perhaps the most important evidence to escape the consideration of the hearing examiner was the letter, referred to as Exhibit "B", addressed to complainant from the superintendent in behalf of the Board. In notifying complainant that her contract would not be renewed, the letter concluded:
The reason for the Board's decision not to extend to you such a contract is that the delivery by you of a child in October of 1975 will occasion an unwarranted interruption in the continuity of the children's classroom instruction. To the extent possible, the Board's policy is to minimize any interruption in classroom instruction, whatever the reason. [Emphasis supplied]
It seems clear to us that the only policy in evidence before the examiner was to minimize classroom interruption "whatever the reason."
The provisions of the agreement between the school district and the Haddonfield Education Association do not discriminate against women who seek a leave of absence because of pregnancy. At best the record is silent with respect to the maternity leave policy for nontenured teaching staff members. *372 This is far from sufficient to support complainant's burden. In reviewing the entire record, we are unable to determine a basis upon which the hearing examiner could reach the factual conclusion of discrimination. In addition, we find no basis for the Director's accepting the findings and conclusions. We find particularly appropriate the language of Harper v. Trans World Airlines, Inc., 525 F.2d 409 (8 Cir.1975), which rejected a claim that a rule of the airline proscribing the employment of spouses in the same department constituted sex discrimination:
In sum, plaintiff has failed to present probative evidence to support her allegation that defendant's rule induces sex discrimination. It is clear that Title VII actions cannot be successfully maintained on the basis of conjectural and speculative evidence. Robinson v. City of Dallas, supra 514 F.2d [1271] at 1273 (5th Cir., 1975). Since plaintiff failed to prove a "disparate effect" upon women due to the implementation of defendant's rule, the requisite threshold issue has not been met and there is no need for defendant to show any business necessity for the rule. Coopersmith v. Roudebush, 170 U.S. App. D.C. 374, 379, 517 F.2d 818, 823 (1975). [at 414]
We therefore reverse the determination and order of the Director. The complaint of Melinda W. Gilchrist against the Board of Education of the Borough of Haddonfield, Camden County, is dismissed.