SANDRA CASTELLANO, COMPLAINANT-RESPONDENT, v. LINDEN BOARD OF EDUCATION, FRANK MANNUZZA AND AMERICO TARANTO, RESPONDENTS-APPELLANTS.

Argued November 14, 1978—Decided April 9, 1979.

*Mr. Yale Manoff* argued the cause for appellants (*Messrs. Weinberg, Manoff and Dielz,* attorneys; *Mr. David Paul Ericksen,* on the brief).

*Mr. Joseph M. Gorrell,* Deputy Attorney General, argued the cause for respondent and the Division on Civil Rights (*Mr. John J. Degnan,* Attorney General of New Jersey, attorney; *Ms. Erminie L. Conley,* Deputy Attorney General, of counsel).

The opinion of the court was delivered by

SULLIVAN, J. This is a civil rights case. The complainant, Sandra Castellano, is a married, tenured school teacher employed by the Linden Board of Education (Board). She became pregnant and gave birth to a child on August 29, 1974. During August and prior to the birth, she informed the Board of her wish to resume her teaching duties after her confinement. (She was certified by her physician as being able to do so as of September 27, 1974.) However, the Board required her to take a one-year maternity leave of absence and also denied her request to apply her accumulated sick leave to her absence due to childbirth.

The Board's position was bottomed on a collectively negotiated agreement between the Board and the Linden Educational Association which provided for a mandatory maternity

leave for a tenured teacher.[1] A separate provision of the agreement dealing with allowable sick leave and the accumulation thereof did not refer to absence on account of pregnancy.

On October 17, 1974 Mrs. Castellano filed a complaint with the Division of Civil Rights alleging that she was being discriminated against on account of sex. During the pendency of the hearing, the Board, on December 9, 1974, permitted complainant to return to her teaching duties.

The Director of the Division of Civil Rights, after a plenary hearing, found that the Board's policies of a mandatory one-year maternity leave, and refusal to allow a pregnant teacher to use her accumulated sick leave for her absence due to childbirth, discriminated against complainant because of her sex and were in violation of the New Jersey "Law Against Discrimination," *N. J. S. A.* 10:5-1 *et seq.* The Director, in addition to declaring the foregoing policies or practices to be unlawful, awarded complainant $3,557.10, her loss of pay from September 1974 to December 9, 1974.[2] She was also awarded $600 damages for "humiliation, pain and mental suffering." The Director's order included specific "cease and desist" provisions ancillary to the affirmative relief ordered.

The Appellate Division, in a comprehensive opinion, 158 *N. J. Super.* 350 (1978), affirmed the Director's decision and order with the exception of paragraph 11 thereof. That paragraph which required that any provision for leave for

---

[1]The agreement provided that the teacher could return to work at the commencement of the next school year following termination of her pregnancy, or the commencement of the next succeeding school year thereafter, subject to Board approval.

[2]We note that the Director's order also provides "Further, the Respondents may credit Complainant's accumulated sick time with sixteen (16) days (after she has received payment of back pay)." If the 16 days represents the period complainant was disabled following the birth of her child, these days should be charged against her accumulated sick leave.

child care include male as well as female employees, was vacated, the Attorney General conceding that the subject matter of paragraph 11 was beyond the scope of the case. Certification was granted by this Court. 77 *N. J.* 485 (1978).

 Subject to our comment in note 2, we agree substantially with the Appellate Division ruling and underlying reasoning as set forth in its opinion, except for its affirmance of the award of $600 damages to complainant for "humiliation, pain and mental suffering." While we agree with the award of full back pay, we conclude that the proofs do not support the $600 award.

The Board, in applying its policies of mandatory maternity leave and sick leave utilization, was unquestionably acting in good faith pursuant to contractual provisions incorporated in a collectively negotiated agreement between the Board and the Linden Educational Association.[3] Failure on the Board's part to abide by the terms of such agreement could have subjected the Board to a claim of an unfair labor practice.

 The evidence to support the $600 award is as follows. In August 1974 complainant had written to the Superintendent of Schools advising him of her pregnancy. She informed him that she intended to be ready for the opening of school in September, but would be temporarily absent for her child's birth. In response to her communication, complainant received letters from the Superintendent of Schools and the Board's counsel referring to the contractual provisions for maternity leave and sick leave. She was notified that the Board had granted her a maternity leave of absence from September 1, 1974 to June 30, 1975. "Best wishes for the coming blessed event" were expressed. The child was born on August 29, 1974.

---

[3]Since the subject matter of the dispute involved these contractual provisions, the Division should have invited the Linden Educational Association to present its views as to the legality of such provisions.

At the civil rights hearing complainant was asked about her personal reaction to these letters. Her answer was:

First upset — I couldn't believe it, I couldn't believe that this was happening to me. I saw no basis for this. Upset. Cried. Stayed in the house for a while.

She was then asked why she was upset, and answered:

Because I didn't think that something like this could happen to me. I was afraid of the way people would react to me; just the whole thing, the whole — just upset me.
Q. Did you cry on one occasion or on more than one occasion?
A. No, many.
Q. How long a period would you say this upset lasted?
A. Oh a couple of weeks, I guess.

On cross-examination complainant acknowledged that she had known all along about the contractual provision concerning maternity leave and sick leave. However, she said she was depressed "because of this case."

Complainant's husband also testified that his wife became "very upset" after he related to her a conversation he had with the Superintendent of Schools in August 1974 regarding her return to work.

We recognize that the award is not substantial. But we are dealing with public funds and a public body which acted in good faith in accordance with contractual provisions negotiated with complainant's own representative. The evidence adduced at the hearing in support of the $600 award is nebulous. There was no basis for any feeling of humiliation on complainant's part. Maternity leaves of absence of one kind or another are commonplace. While we uphold the ruling that a mandatory one-year maternity leave without pay and without allowance for use of accumulated sick leave is discriminatory, we are unable to find in the record a substantial basis for compensation for "humiliation, pain and mental suffering," in addition to the award of full back pay.

Defendant Board argues that the affirmance by the Appellate Division of the finding of sex discrimination herein is contrary to the decision by another panel of the Appellate Division in *Gilchrist v. Board of Education of Haddonfield,* 155 *N. J. Super.* 358 (1978). We find the decisions to be distinguishable. In *Gilchrist,* the contract of a non-tenured school teacher was not renewed because she had notified her Board of Education of her pregnancy and expected delivery in late September or early October. The basis for the nonrenewal of her contract was that her prospective disability and absence from school would interfere with a firm Board policy of continuity of instruction without interruption. The Appellate Division, in *Gilchrist,* in holding that no discrimination based on sex had been shown, emphasized that the Board's policy was not limited to disability and absence resulting from pregnancy but applied to anticipated absence of substantial duration from teaching duties, for any reason. *Id.* at 368–369.

Concededly, in *Gilchrist,* the Appellate Division found in the Board's policy of continuity of classroom instruction a rational basis for nonrenewal of the teaching contract. In the instant case, defendant Board emphasizes the need for continuity of classroom instruction as the justification for its policy of a mandatory one-year maternity leave.

We agree that the continuity concept is a legitimate goal for a Board to consider. However, it cannot be adhered to blindly at the expense of the civil rights of teachers. The policy of a mandatory one-year maternity leave may have been well intentioned. In purpose and effect, though, it discriminates against teachers because of their sex. It is therefore illegal and void.

The nonallowance of the use of accumulated sick leave during complainant's absence due to childbirth suffers from the same fault. A woman giving birth to a child becomes physically disabled and unable to attend to her teaching duties for that reason. It is discriminatory not to allow her to use her accumulated sick leave during that period of

temporary disability, when it can be used for any other period of absence due to physical disability.

The judgment of the Appellate Division is in all respects affirmed except for its allowance of $600 damages for humiliation, pain and mental suffering. That part of the judgment is reversed.

SCHREIBER, J., concurring and dissenting. I join in the majority's judgment that the mandatory maternity leave and sick leave provisions of the agreement between the Linden Board of Education and the Linden Education Association violated the Law Against Discrimination, *N. J. S. A.* 10:5–1 *et seq.* I also agree with the majority's determination concerning the award for humiliation and mental suffering. However, I cannot agree with its blanket approval of the Director's order which in some significant respects far exceeds the issues which were presented.

The first indication of the limited scope of the questions which were to be resolved may be found in the pleadings. The verified complaint filed by Sandra Castellano with the Division on Civil Rights alleged that she had been a teacher in the Linden school system since 1970, that she had given birth to a child on August 29, 1974, that she had been prepared to return to the classroom on October 1, 1974, but that the Linden Board of Education had involuntarily placed her on a leave of absence status until June 30, 1975. It was only because of her sex that she had been prevented from returning to her duties. The respondents Linden Board of Education, Superintendent of Schools and President of the Board of Education admitted substantially all the operative facts in the complaint, but denied any discrimination.

The plaintiff, her husband, the assistant superintendent and the superintendent of schools were the only witnesses at the hearing before the Division. The exhibits consisted of the union contract and some correspondence between plaintiff and the school officials. The facts were virtually undisputed.

Plaintiff, a first grade school teacher with tenure, wrote the superintendent of schools on August 7, 1974 that the birth of her child "may come as late as early September" and that she intended at present to be at her job for the opening of school; that she anticipated a short-term absence which would begin and terminate in accordance with her obstetrician's instructions; and that at the discretion of the Board of Education the absence should be treated as sick leave or as a temporary leave of absence without pay.

The Board denied the request for sick leave because of the provisions of the contract between the Board of Education and the Linden Education Association. It granted plaintiff a maternity leave of absence from September 1, 1974 to June 30, 1975 in accordance with Article XXII of the contract which required a maternity leave to terminate at the commencement of the next school year following termination of the pregnancy.

Plaintiff's child was born on August 29, 1974. On October 1, 1974 plaintiff wrote the superintendent that she was able to return to work. She enclosed a confirmatory medical report. Her complaint with the Division on Civil Rights was filed on October 17, 1974.

Counsels' openings, their colloquies throughout the proceeding, and summations were directed to the validity of Article XXII (maternity leave) and Article XIX (sick leave) of the agreement between the Board of Education and the Linden Education Association. The Hearing Examiner viewed these as the principal issues. His recommended award was based on findings of fact and conclusions of law that Articles XIX and XXII of the agreement violated *N. J. S. A.* 10:5-12(a) and 10:5-4, resulting in Mrs. Castellano's damages.

The Director's order went far beyond the issues framed by the pleadings, expounded in his Finding of Probable Cause, developed at the hearing, and resolved by the Hearing Examiner's findings of fact and conclusions of law. In paragraphs 5 and 6 of the ordering portion of his judgment,

the Director determined that the respondents were not to differentiate between men and women with regard to life insurance, health or temporary disability insurance or sick leave plans. In paragraph 4 he provided that:

Respondents will maintain no written or unwritten employment policy or practice which excludes from employment applicants or employees because of pregnancy.

No evidence was presented or record made on any of these matters. The parties had neither briefed nor argued them.

There should be a sufficiently related nexus between the orders of the Director and the issues which have been raised and tried out in the proceedings. Professor Davis has stated the general guiding principle to be that "administrative orders must be reasonably related to the findings upon which they rest and must avoid undue breadth." 1 *K. Davis, Administrative Law Treatise* § 8.19 at 603 (1958). In the leading opinion of *NLRB v. Express Publishing Co.,* 312 *U. S.* 426, 61 *S. Ct.* 693, 85 *L. Ed.* 930 (1941), the United States Supreme Court laid down the basic rule that an administrative agency's order

must, like the injunction order of a court, state with reasonable specificity the acts which the respondent is to do or refrain from doing. It would seem equally clear that the authority conferred on the Board to restrain the practice which it has found the employer to have committed is not an authority to restrain generally all other unlawful practices which it has neither found to have been pursued nor persuasively to be related to the proven unlawful conduct. [312 *U. S.* at 433, 61 *S. Ct.* at 698, 85 *L. Ed.* at 936]

Though the Director has been vested with broadly stated remedial powers, *N. J. S. A.* 10:5–6 and *N. J. S. A.* 10: 5–17, the remedial steps which may be required to correct the improper conduct and insure compliance with respect to that conduct contemplate a reasonable relationship between the remedy and the illegality. Under the circumstances here, the Director exceeded the limits of sound discretion.

The nature of the problems involved in these gratuitous ordering paragraphs demonstrates the inappropriateness of such broadly drawn orders. For example, the prohibition in ordering paragraph 4 against a denial of employment to an applicant because of pregnancy would seem to conflict with *Gilchrist v. Haddonfield Bd. of Ed.*, 155 *N. J. Super.* 358 (App. Div. 1978), whose holding the majority is approving today. In *Gilchrist* the refusal to rehire a non-tenured teacher because she contemplated the birth of a child during the school year was held not to violate the Law Against Discrimination in the absence of a showing that other contemplated disabilities would not result in a like disqualification. The issue in *Gilchrist* has not been presented to us. Nor was it before the Division. The question should not have been resolved in the Director's order. Nor is there any need or justification for this Court to place its stamp of approval on that action.

So, too, determinations under our Law Against Discrimination concerning life insurance and sick leave plans which may have some differential impact due to sex should be resolved not in a vacuum, but on the basis of a record after the parties have had an opportunity to discuss and argue the issue. Compare *General Electric Co. v. Gilbert,* 429 *U. S.* 125, 97 *S. Ct.* 401, 50 *L. Ed.* 2d 343 (1976), and *Geduldig v. Aiello,* 417 *U. S.* 484, 94 *S. Ct.* 2485, 41 *L. Ed.* 2d 256 (1974), with *Los Angeles Dept. of Water & Power v. Manhart,* 435 *U. S.* 702, 98 *S. Ct.* 1370, 55 *L. Ed.* 2d 657 (1978). In my opinion paragraphs 4, 5 and 6 are overbroad and I would eliminate them.

Other than as stated herein, I concur in the majority opinion and I would affirm the judgment as modified.

Justice CLIFFORD joins in this opinion except for its expression of approval of the majority's determination concerning the award for humiliation and mental suffering.

HANDLER, J., concurring and dissenting. This Court has concluded with ample justification that Sandra Castellano

was properly found by the Director of the Division on Civil Rights to have been the victim of sex-discrimination contrary to the Law Against Discrimination, *N. J. S. A.* 10:5–1 *et seq.* The Linden Board of Education discriminated against Mrs. Castellano, a tenured school teacher, by requiring her to take a mandatory leave of absence for one year without pay or sick leave credit because of the birth of her child. The full Court finds sufficient warrant for the Director's award of compensatory damages to Mrs. Castellano. Yet, inexplicably, the majority of the Court would excise from that compensatory award damages — modestly set at $600 — for the anguish unquestionably suffered by Mrs. Castellano as a result of the Board's conduct. I think the Court is wrong in this respect and I therefore dissent from that portion of its opinion and ruling.

There can be no disagreement with the basic, oft-repeated precept that the Division on Civil Rights has far-ranging and comprehensive jurisdiction in the field of civil rights. *Jackson v. Concord Co.,* 54 *N. J.* 113 (1969) ; *Fraser v. Robin Dee Day Camp,* 44 *N. J.* 480 (1965) ; *Jones v. Haridor Realty Corp.,* 37 *N. J.* 384 (1962) ; *Levitt & Sons, Inc. v. Div. Against Discrimination,* 31 *N. J.* 514, appeal dismissed 363 *U. S.* 418, 80 *S. Ct.* 1257, 4 *L. Ed.* 2d 1515 (1960). Consistent with this embracive authority, the Division has broad and flexible powers to combat discrimination. *E. g., Passaic Daily News v. Blair,* 63 *N. J.* 474 (1973) ; *Zahorian v. Russell Fitt Real Estate Agency,* 62 *N. J.* 399 (1973) ; *N. J. Builders, Owners & Managers Ass'n v. Blair,* 60 *N. J.* 330 (1972) ; *David v. Vesta Co.,* 45 *N. J.* 301 (1965).

Included in the Division's arsenal of remedial weapons is the authority to affix damages for injury and loss consequent upon the discriminatory deprivation of civil rights. This encompasses compensatory damages for economic and special pecuniary loss. *Jackson v. Concord Co., supra;* see *Zahorian v. Russell Fitt Real Estate Agency, supra; Harvard v. Bushberg Bros.,* 137 *N. J. Super.* 537 (App. Div. 1975) certif. granted 71 *N. J.* 493 (1976) (dismissed by stipulation). It

has also been recognized that damages as a remedial measure in the civil rights area can be awarded for the pain and suffering, in the nature of humiliation, embarrassment and loss of self-esteem, often endured by the victims of discrimination. See *e. g., Batavia Lodge No. 196, Loyal Order of Moose v. New York State Div. of Human Rights,* 35 *N. Y.* 2d 143, 359 *N. Y. S.* 2d 25, 316 *N. E.* 2d 318 (Ct. App. 1974); *Alcorn v. Anbro Engineering, Inc.,* 2 *Cal.* 3d 493, 86 *Cal. Rptr.* 88, 468 *P.* 2d 216 (Sup. Ct. 1970); *Massachusetts Commission Against Discrimination v. Franzaroli,* 357 *Mass.* 112, 256 *N. E.* 2d 311 (Sup. Jud. Ct. 1970); *121–129 Broadway Realty, Inc. v. New York State Div. of Human Rights,* 49 *A. D.* 2d 422, 376 *N. Y. S.* 2d 17 (App. Div. 1975). See generally, Annot., "Recovery of Damages for Emotional Distress Resulting from Discrimination Because of Sex or Marital Status, 61 *A. L. R.* 3d 944 (1975); Annot., "Recovery of Damages for Emotional Distress Resulting from Racial, Ethnic or Religious Abuse or Discrimination", 40 *A. L. R.* 3d 1290 (1971). Damages for this kind of injury have been vindicated by our courts. *Zahorian v. Russell Fitt Real Estate Agency, supra; Harvard v. Bushberg Bros., supra; Gray v. Serruto Builders, Inc.,* 110 *N. J. Super.* 297 (Ch. Div. 1970); see also, Blumrosen, "Antidiscrimination Laws in Action in New Jersey: A Law-Sociology Study", 19 *Rutgers L. Rev.* 189, 242–243 (1965).

The majority of the Court repudiates the award made by the Director to Mrs. Castellano for her mental and emotional anguish on evidential grounds. *Ante* at 410. I take it that the majority does not quarrel with, nor does it intend to compromise, the standard of appellate review generally applicable to the decisions of the Director. That standard imposes upon courts a conscientious duty to sustain the factual determinations of the civil rights tribunal "* * * if they could reasonably have been reached on sufficient credible evidence present in the record considering the proofs as a whole and with due regard to the opportunity of the one who heard the witnesses to judge their credibility, as well as the

agency's expertise where this is a pertinent factor". *Gilchrist v. Bd. of Ed. of Haddonfield,* 155 *N. J. Super.* 358, 367–368 (App. Div. 1978); see *Jackson v. Concord Co., supra* 54 *N. J.* at 117–118; also, *Mayflower Securities Co. v. Bureau of Securities,* 64 *N. J.* 85, 92–93 (1973). This rule of review is especially apt in the sensitive area of remedial relief. The administrative redress fashioned by the Director must be fine-tuned to the nuances of discrimination and the psychological as well as economic suffering it causes. The relief determined by the Director should not therefore be overturned by courts on review in the absence of a persuasive showing of illegality, arbitrariness or an abuse of discretion. *Zahorian v. Russell Fitt Real Estate Agency, supra* 62 *N. J.* at 409–410; see *Mayflower Securities Co. v. Bureau of Securities,* 64 *N. J. supra* at 93.

The evidence in the record of this case, some of which is recounted in the opinion of the Court, *Ante* at 410–412, is virtually self-demonstrative of the reasonableness of the Director's award of damages for mental and emotional suffering. There can be no retreat from the factual finding that Mrs. Castellano was upset and distraught as a result of the Board's discrimination against her. Her mortification was undoubtedly intensified when her husband was personally berated by the superintendent who, in effect, stated "What kind of father are you or husband to have * * * [and] want your wife to go back so soon", clearly implying that the Castellanos were not decent parents. The sting of this discriminatory affront was not drawn because the Board expressed "[b]est wishes for the coming blessed event". *Ante* at 410.

The majority deprecates this evidence as "nebulous" and is "unable to find in the record a substantial basis for compensation for 'humiliation, pain and mental suffering'." *Ante* at 411. It states that "[t]here was no basis for any feeling of humiliation on complainant's part" because "[m]aternity leaves of absence of one kind or another are commonplace". *Id.* It is of greater significance to me, however, that the

Director did not think the evidence of Mrs. Castellano's humiliation was light fiction. The majority's contrary perceptions simply point up the fact that not everyone has a nose for discrimination, especially in its most subtle forms. We are coming to realize that people are products of cultural conditioning which frequently obscures recognition of social wrongs. The "commonplace", to use the majority's word, may constitute a Trojan horse of social inequities. Discrimination frequently goes uncorrected because it is undetected. This is why governmental responsibility in the civil rights field has been placed in an administrative body that is expected to have the keenness to see through these forms of cultural blindness and spot discrimination where it exists. *Cf. Countiss v. Trenton State College,* 77 *N. J.* 590, 595 (1978); *Hinfey v. Matawan Regional Bd. of Ed.,* 77 *N. J.* 514 (1978). And, this is why it is important for courts to defer to the factual assessments of such administrative agencies.

I do not find adequate any of the other rationalizations put forward by the Court to justify rejection of the $600 award in favor of Mrs. Castellano. The good faith of the Board is not a factor since the award is not a punitive sanction; rather, it is a modicum of compensation for Mrs. Castellano's personal chagrin and diminishment at the hands of the Board. *Zahorian v. Russell Fitt Real Estate Agency, supra.* The status of the Board as a public body is not relevant; governmental agencies are subject to the full strictures of the Law Against Discrimination. *Blair v. Mayor and Council of Bor. of Freehold,* 117 *N. J. Super.* 415 (App. Div. 1971), certif. den. 60 *N. J.* 194 (1972); *cf. Galloway Tp. Bd. of Ed. v. Galloway Tp. Ass'n of Educational Secretaries,* 78 *N. J.* 1 (1978). Indeed, the Board was under an affirmative and independent duty to eliminate and avoid discrimination within the school system. *Cf. Hinfey v. Matawan Regional Bd. of Ed., supra.* The inclusion in the negotiated teachers' contract of the discriminatory provisions against expectant and new mothers assuredly was no legal excuse for the

Board's actions. These provisions were clearly invalid and unenforceable. *Cf. Tp. of W. Windsor v. PERC,* 78 *N. J.* 98 (1978). It follows that they could not constitute grounds for an unfair labor practice reprisal, as suggested by the majority, *Ante* at 410, especially in view of the Board's own decision to turn from the contract and permit Mrs. Castellano to resume her teaching duties early in the school year.

In sum, the Board violated Mrs. Castellano's civil rights. Regardless of the Board's motives, its actions had a rude result for Mrs. Castellano. She was, in the reasonable judgment of the Director, entitled to modest remedial compensation for the understandable turmoil she experienced. I could not be in stronger accord with the Appellate Division, who with the same vantage and perspective of the record enjoyed by us, found that there was ample support for this award. 158 *N. J. Super.* 350, 363 (1978). I would affirm its determination sustaining these damages. To this extent, I dissent from the opinion and judgment of the Court.

Justices PASHMAN and CLIFFORD join in this opinion.

*For affirmance of order*—Chief Justice HUGHES and Justices MOUNTAIN, SULLIVAN, PASHMAN and HANDLER—5.

*For reversal or order in part*—Justices CLIFFORD and SCHREIBER—2.

*For reversal of damages*—Chief Justice HUGHES and Justices MOUNTAIN, SULLIVAN and SCHREIBER—4.

*For affirmance of damages*—Justices PASHMAN, CLIFFORD and HANDLER—3.