158 N.J. Super. 350 (1978)
386 A.2d 396
SANDRA CASTELLANO, COMPLAINANT-RESPONDENT,
v.
LINDEN BOARD OF EDUCATION, FRANK MANNUZZA AND AMERICO TARANTO, RESPONDENTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued October 25, 1977.
Decided March 27, 1978.
*353 Before Judges LORA, SEIDMAN and MILMED.
Mr. Yale Manoff argued the cause for appellants (Messrs. Weinberg, Manoff & Dietz, attorneys; Mr. David P. Ericksen on the brief).
Mr. Joseph M. Gorrell, Deputy Attorney General, argued the cause for respondent Sandra Castellano and the Division of Civil Rights (Mr. William F. Hyland, Attorney General of New Jersey, attorney; Ms. Erminie L. Conley, Deputy Attorney General, of counsel).
The opinion of the court was delivered by SEIDMAN, J.A.D.
The Linden Board of Education, its president, Frank Mannuzza, and the Superintendent of Schools, Americo Taranto (referred to collectively hereafter as the board), appeal an order issued on July 22, 1976 by the Director of the Division of Civil Rights determining that they had violated the Law Against Discrimination of the State of New Jersey, N.J.S.A. 10:5-1 et seq., specifically N.J.S.A. 10:5-4[1] and N.J.S.A. 10:5-12(a),[2] *354 directing them to cease and desist from doing any act prohibited by that law and granting certain relief to the complainant Linda Castellano, a teacher employed by the Board.
The controversy involves provisions contained in the collectively negotiated agreement between the board and the Linden Education Association for the period July 1, 1974-June 30, 1975, respecting maternity leaves of absence and sick leave benefits. We are called upon to decide on this appeal whether requiring a pregnant female teacher to take a mandatory maternity leave of absence and refusing to allow her to utilize accumulated sick leave during absence due to childbirth constitute impermissible discrimination on the basis of sex.
Under Article XXII, paragraph C, of the agreement, a tenured teacher, upon becoming pregnant or within two months thereafter, must apply to the board for leave of absence without pay, starting "with the termination of the seventh (7) month of pregnancy" as determined by her attending physician or, in the absence of a statement from such physician, by a board-designated physician. Upon the commencement of such leave the teacher is required to submit to the board a written request to return at the beginning of either the next school year following termination of her pregnancy, or the next succeeding year thereafter. Article XIX, dealing with allowable sick leave and the accumulation thereof, makes no special reference to absence on account of pregnancy.
Complainant, a tenured first grade teacher, was pregnant and gave birth on August 29, 1974. Although she informed the board of her wish to return to her teaching duties and was certified by her physician as being able to do so as of September 27, she was advised by the Superintendent of Schools that she would have to take a maternity leave of absence from September 1, 1974 to June 30, 1975 because of the terms of the contract and to "establish some stability in the classroom." She was also informed that her request for sick leave was denied.
*355 A complaint was thereupon filed with the Division of Civil Rights. After a hearing the hearing examiner determined that the sick leave policy as it applied to pregnancy-related disabilities violated the Law Against Discrimination, in that permitting teachers to take sick leave for all illnesses or disabilities other than for pregnancy "has the effect of discriminating against women as pregnancy is characteristic of their sex." He found further that the board failed to establish that the maternity leave of absence provision was a matter of "business necessity" and that refusing to permit complainant to return to work on or about October 1, 1974 also constituted discrimination against her in the terms and conditions of employment because of sex.
The hearing examiner recommended that the board be held "jointly and severally liable to the complainant for back pay in the amount of $3,557.10 gross"; that complainant's accumulated sick time be "credited with sixteen days (after she has received payment of back pay)," and that she be awarded damages for humiliation, pain and mental suffering in the amount of $600.
Adopting the report and recommendations of the hearing examiner, the Director of the Division found that the complainant had been discriminated against on the basis of her sex. He ordered the board to (1) cease and desist from discriminating on the basis of sex and/or pregnancy; (2) treat disability caused by pregnancy like any other temporary disability; (3) permit teachers to utilize accumulated sick leave for pregnancy and pregnancy-related disabilities; (4) permit teachers to return to work after maternity leave when they wished to do so and were physically able, and (5) extend the provisions for leave for child care to male as well as female employees.
The board contends on this appeal that neither the requirement of a mandatory maternity leave of absence nor the refusal to allow utilization of accumulated sick leave for absence due to childbirth violates the Law Against Discrimination. It further contends that the Director of the Division *356 erred in awarding damages and that the scope of the order was overly broad.
Addressing first the matter of the mandatory leave of absence policy under scrutiny, we hold that the contract provision did discriminate against complainant on the basis of sex, in violation of the Law Against Discrimination.
The board's reliance upon a need for "continuity of instruction," unquestionably a valid consideration, Gilchrist v. Haddonfield Bd. of Ed., 155 N.J. Super. 358 (App. Div. 1978), is nonetheless misplaced here. The temporary absence of any teacher, male or female, because of physical disability, would tend to be disruptive of classroom instruction. The singling out of pregnancy-related disabilities in the board's expression of concern over the continuity of instruction, thereby ignoring all other extended absences because of physical disability, only emphasizes the discriminatory nature of the policy.
A sensible rejoinder to the board's otherwise legitimate need for advance planning is found in Green v. Waterford Bd. of Ed., 473 F.2d 629 (2 Cir.1973):
Plaintiff admits the obvious, that men do not become pregnant, but points out that men, being human, are also subject to crises of the body, some of which, like childbirth, give ample warning: A cataract operation or a prostatectomy, for example, may be planned months ahead. Because male teachers are not forced by defendant Board to take premature leave because of a known forthcoming medical problem, female teachers should not be treated differently. [at 634]
It is to be noted, further, as the board acknowledged at the hearing, that substantial numbers of substitutes were utilized in the schools for periods of weeks and, at times, months. Yet only teachers disabled on account of childbirth were not permitted to return to work when physically able to do so.
In Cedar Rapids Community School Dist. v. Parr, 227 N.W.2d 486 (Iowa Sup. Ct. 1975), the court struck down as discriminatory a school district's mandatory leave regulation requiring pregnant teachers to commence their leave *357 no later than the end of the fifth month of pregnancy and to return to work not before the commencement of a new academic year without the district's approval. The court said:
Every human, regardless of sex, is subject to crisis or physiological disabilities of the body. Here the regulation isolates pregnancy from all other disabilities or physical conditions and makes it subject to the restrictive provisions therein provided. Noticeably, in the case of other illnesses or debilitating conditions an individual is not required to cease employment at a fixed time and return to work following recovery at a set date regardless of the employee's wishes or medical advice. Any person affected by a disability, other than pregnancy, ceases employment and thereafter returns to work when he or she alone deems it proper to do so. But this is not the case where the individual becomes pregnant. Unquestionably, such discriminate treatment is limited to sex alone. [at 493]
See also, Union Free School Dist. No. 6, etc. v. New York St. H.R.A.B., 35 N.Y.2d 371, 362 N.Y.S.2d 139, 320 N.E.2d 859 (Ct. App. 1974); Farris v. St. Louis Bd. of Ed., 417 F. Supp. 202 (E.D. Mo. 1976); Fabian v. Indep. School Dist. No. 89 of Okl. City, 409 F. Supp. 94 (W.D. Okl. 1976).
We are unable to discern any rational basis for a mandatory leave of absence rule which, in its particular application to the complainant in this case, arbitrarily and without medical reason prevents a physically capable woman from returning to her job simply because the temporary disability is occasioned by pregnancy.[3] Since in no case of physical disability other than pregnancy is a teacher required to cease employment and not return before a fixed date, there is thus imposed on women, without business necessity or other justification, a substantial burden that men need not suffer. See *358 Nashville Gas Co. v. Satty, 434 U.S. 136, 98 S.Ct. 347, 54 L.Ed.2d 356 (1977). Cf. Cleveland Bd. of Ed. v. La Fleur, 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974).
The fact that the policy is set forth in a collectively negotiated agreement cannot justify it. Rights assured by the Law Against Discrimination may not be bargained away either by the employer, the employees' negotiating representative, or both acting in concert. Robinson v. Lorillard Corp., 444 F.2d 791, 799 (4 Cir.1971), cert. dism. 404 U.S. 1006, 92 S.Ct. 573, 30 L.Ed.2d 665 (1971); Union Free School Dist. No. 6, etc. v. New York St. H.R.A.B., supra, 362 N.Y.S.2d at 143, 320 N.E.2d at 862; see Soricelli v. Board of Review, 46 N.J. Super. 299, 311 (App. Div. 1957); cf. Piscataway Tp. Bd. of Ed. v. Piscataway Main., 152 N.J. Super. 235, 246 (App. Div. 1977).[4]
We turn now to the board's refusal to allow complainant to utilize her accumulated sick leave for her absence on account of childbirth. As indicated earlier, Article XIX of the agreement between the board and the teachers' association, captioned "Sick Leave," contained no reference to absence because of pregnancy. It merely established the number of days of sick leave to which teachers were entitled and allowed *359 the accumulation thereof. However, the board argues that its policy in this respect is justified in that disability due to "normal" childbirth does not fall within the statutory definition of "sick leave," to wit: absence because of "personal disability due to illness or injury," N.J.S.A. 18A:30-1. We disagree and conclude that here, too, the board's action constituted improper discrimination on the ground of sex.
We are aware of General Electric Co. v. Gilbert, 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976), reh. den. 429 U.S. 1079, 97 S.Ct. 825, 50 L.Ed.2d 799 (1976), in which the United States Supreme Court held that a disability plan provided by an employer for all its employees, which paid weekly nonoccupational sickness and accident benefits, but excluded from coverage disabilities arising from pregnancy, did not violate Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e et seq.[5] The reasoning there was, in part, that "[t]he Plan, in effect (and for all that appears), is nothing more than an insurance package, which covers some risks, but excludes others." 429 U.S. at 138, 97 S.Ct. at 409. More recently, the same court held that an employer's policy of compensating employees for limited periods of time during which the employee missed work because of a nonjob-related illness or disability, but excluding therefrom sick leave pay to pregnant employees, was legally indistinguishable from the disability insurance program in Gilbert. Nashville Gas Co. v. Satty, supra.
We need not dwell upon the patent difference between the plans involved in Gilbert and Satty, in which pregnancy-related disabilities were expressly excluded, and the situation here, where the board endeavors to attain a like result through its exclusionary interpretation of disability *360 because of illness or injury. But we do not mean to imply thereby that we would reach a like result if we were dealing here with similar plans. Clearly, we are not bound by those decisions in construing our own statute, even though it relates essentially to the same subject matter as the parallel federal civil rights law. We are free to apply our own concept of that which is right and proper in the circumstances. See Oakwood at Madison, Inc. v. Madison Tp., 72 N.J. 481, 495 (1977); State v. Johnson, 68 N.J. 349, 353 (1975); cf. Robinson v. Cahill, 62 N.J. 490 (1973).
It is noteworthy that at least two states have declined to follow Gilbert in applying their own anti-discrimination statutes. The case of Anderson v. Upper Bucks Cty. Area V.T. School, 30 Pa. Cmwlth. 103, 373 A.2d 126 (Cmwlth. Ct. 1977), involved a teacher whose request to apply her accumulated sick leave to her absence from employment because of pregnancy was refused because of a provision in the agreement between the school and its teachers which excluded from sick leave any benefits for pregnancy. The Pennsylvania Human Relations Commission held that treating pregnancy-related disability differently from any other disability constituted sex discrimination in violation of that state's Human Relations Act, 43 P.S. § 955(a), and ordered the school to pay the teacher the amount she would have received if her request had been granted.
On appeal the court affirmed, holding that "while pregnancy may not be illness or accidental injury, it must under Pennsylvania law be treated as any other physical infirmity." 373 A.2d at 132. It expressed the view, contrary to Gilbert, that "since pregnancy is unique to women, a disability plan which expressly denies benefits for disability arising out of pregnancy is one which discriminates against women employees because of their sex." Id. at 130.
The subject of excluding pregnancy from disability and sick leave benefits was considered in Brooklyn Union Gas v. N.Y. State H.R.A. Bd., 41 N.Y.2d 84, 390 N.Y.S.2d 884, 359 N.E.2d 393 (Ct. App. 1976). The court referred *361 to its previous holdings in public sector employment cases that an employment personnel policy which singled out pregnancy and childbirth for treatment different from that accorded other instances of physical or medical impairment was prohibited by the state's law against discrimination on account of sex. The court held that the state disability benefits law, applicable to private employment, which excepted disability "caused by or arising in connection with a pregnancy" from the minimum benefits mandated by that law, did not excuse failure to comply with the anti-discrimination law. The court refused to "accept the conclusion that employees in the private sector are to be permitted to suffer discrimination from which employees in the public sector are protected." 390 N.Y.S.2d at 887, 359 N.E. 2d at 397. Though cognizant of Gilbert, the court deemed it "instructive," but not binding.[6]
We are convinced that to deprive a pregnant employee of sick leave benefits for an absence occasioned by childbirth does indeed constitute discrimination on account of sex. We must "be mindful of the clear and positive policy of our State against discrimination as embodied in N.J. Const., Art. I, par. 5." Levitt & Sons, Inc. v. Div. Against Discrimination, etc., 31 N.J. 514, 524 (1960). "Effectuation of that mandate calls for liberal interpretation of any legislative enactment designed to implement it." Id.
*362 The Board's concept that pregnancy is not an illness or injury in the usual sense of those words and thus must be excluded from sick leave benefits is far too restrictive and literal and not in accord with the clearly enunciated policy of this State against discrimination on account of sex. Sick leave benefits are intended to alleviate economic losses resulting from inability to work because of disability. This salutary purpose would not be furthered by excluding pregnancy-related absences merely because the condition may not be an illness by strict definition. In this regard, it is worthy of comment that the Temporary Disability Benefits Law, N.J.S.A. 43:21-29, as amended by L. 1961, c. 43, in providing compensation for disability resulting from accident or sickness not compensable under the Workers' Compensation Law, deems pregnancy "to be a sickness during the 4 weeks immediately preceding the expected birth of child and the 4 weeks immediately following the termination of pregnancy," See N.J. Bell Tel. Co. v. Board of Review, 78 N.J. Super. 144 (App. Div. 1963), aff'd 41 N.J. 64 (1963).
It is also significant that the Commissioner of Education has refused to give to N.J.S.A. 18A:30-1 the narrow interpretation urged by the board, taking the position that there is no impediment against construing the statute in favor of a tenured teacher who sought, but was denied, sick leave benefits during a period of absence for maternity reasons.[7] While an appellate tribunal is in no way bound by an agency's interpretation of a statute, Service Armament Co. v. Hyland, 70 N.J. 550, 561 (1976), the Commissioner's construction of this statute coincides with our own view thereof.
*363 The Director of the Division of Civil Rights correctly ordered the board to credit complainant's accumulated sick time with 16 days after receipt by her of back pay.
The board next contends that the Director's order is "overly broad and reaches matters not in the record nor a part of petitioner-respondent's complaint." To the extent that the order requires the board to allow men to take child-care leaves of absence, the Attorney General concedes that the issue is beyond the scope of this case and states that "the Division does not object to vacating Paragraph 11 of the Director's order." Accordingly, that portion of the order will be vacated.
The awards of back pay and damages for pain and suffering were proper. N.J.S.A. 10:5-17; see Gray v. Serruto Builders, Inc., 110 N.J. Super. 297, 312 (Ch. Div. 1970). Cf. Zahorian v. Russell Fitt Real Estate Agency, 62 N.J. 399, 416 (1973). As for the remainder of the order, the scope of which was quite broad, the remedial steps which the Director required were largely within his discretion under the statute and, absent a showing of illegality, arbitrariness or the like, we should not interfere with his determination that they were necessary and appropriate. Zahorian v. Russell Fitt Real Estate Agency, supra at 409-410; see Jackson v. Concord Co., 54 N.J. 113, 124-125 (1969). No such showing was made here.
As modified, the determination and order under review is affirmed.
NOTES
[1] N.J.S.A. 10:5-4 provides, in pertinent part, that "[a]ll persons shall have the opportunity to obtain employment * * * without discrimination because of * * * sex, subject only to conditions and limitations applicable to all persons. * * * *"
[2] N.J.S.A. 10:5-12(a), to the extent pertinent here, declares it to be an unlawful discrimination for an employer, "because of the * * * sex of any individual, * * * to discriminate against such individual in compensation or in terms, conditions or privileges of employment; * * *."
[3] The matter of requiring pregnant employees to commence maternity leave at a particular stage of the pregnancy is not involved on this appeal. On this issue, see Annotation, "Pregnancy Leave or Maternity Leave Policy, or Lack Thereof, as Unlawful Employment Practice Violative of Title VII of the Civil Rights Act of 1964 (42 U.S.C.A. §§ 2000e et seq.)," 27 A.L.R. Fed. 537, 558 (1976).
[4] The conclusion we reach respecting the discriminatory effect upon complainant of the mandatory leave of absence provision involved herein does not conflict with the recent holding in Gilchrist v. Haddonfield Bd. of Ed., 155 N.J. Super. 358 (App. Div. 1978). There, another part of this court reversed a determination by the Director of the Division of Civil Rights that a school district had discriminated against a nontenured, pregnant teacher because of sex by refusing to renew her contract for the ensuing school year on the stated ground that the expected delivery of the child would "occasion an unwarranted interruption in the continuity of the children's classroom instruction." The reason for the reversal was that the record did not support the finding below that pregnancy had been singled out as the only kind of temporary disability which would lead to the nonrenewal of a nontenured teacher's contract. Except for the action taken with respect to the teacher concerned, no evidence was presented of the general policy in the school district as to predicted absences by nontenured teachers in the following school year.
[5] The unlawful employment practices defined in 42 U.S.C.A. § 2000e et seq. are nearly identical to those defined in N.J.S.A. 10:5-12(a).
[6] The United States Senate Committee on Human Resources, reporting in July 1977 on proposed amendments to Title VII of the Civil Rights Act of 1964, voiced its disagreement with Gilbert (Senate Committee Report No. 95-331). It said that the guidelines issued by the Equal Employment Opportunity Commission specifically requiring employers to treat disabilities caused or contributed to by pregnancy or related medical conditions as all other temporary disabilities (which the United States Supreme Court rejected) rightly implemented Congress' intent in barring sex discrimination in the 1964 act. The Committee noted, further, that all seven federal Circuit Courts of Appeal which had considered cases alleging pregnancy discrimination interpreted the congressional purpose to forbid such discrimination.
[7] Cinnaminson Tp. Bd. of Ed. v. Silver (Commissioner of Education Decision, August 17, 1976). While the Commissioner cited a number of federal cases the validity of which is open to doubt because of Gilbert and Satty, we have no reason to suppose that he would have reached a different result if the matter had come before him after those decisions.