LILLIAN HYNES, PETITIONER-RESPONDENT, v. BOARD OF
EDUCATION OF THE TOWNSHIP OF BLOOMFIELD, ESSEX
COUNTY, RESPONDENT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued October 26, 1982—Decided June 6, 1983.

Before Judges BOTTER, POLOW and BRODY.

*John A. Errico* argued the cause for appellant.

*Sheldon H. Pincus* argued the cause for respondent (*Bucceri & Pincus,* attorneys; *Sheldon H. Pincus* on the brief).

*Irwin I. Kimmelman,* Attorney General of New Jersey, attorney for respondent, filed a statement in lieu of brief (*Alfred E. Ramey, Jr.,* Deputy Attorney General, of counsel and on the statement).

The opinion of the court was delivered by

POLOW, J.A.D.

Petitioner Lillian Hynes is a tenured teacher in the Bloomfield Township school system. She applied for paid sick leave from December 1, 1978 until January 24, 1979 for maternity based upon a doctor's certificate indicating an expected date of confinement of December 27, 1978. Her child was born on December 19, 1978. Respondent, the local Board of Education ("local board"), denied petitioner's request for paid sick leave because she "did not provide sufficient evidence of disability...." The State Board of Education ("State Board") on appeal ruled that sick leave was allowable to a pregnant teacher based upon presumptive periods of disability commencing one month before the expected date of childbirth and ending one month (20 working days) after child birth. The local board appeals. We conclude that the determination by the State Board is a reasonable exercise of its administrative authority and affirm.

Based upon her doctor's certification that she was pregnant and was expected to give birth on December 27, 1978, Hynes sought maternity leave and sick leave from December 1, 1978 without setting forth any other cause of disability. Upon receiving the application, the superintendent of schools requested that he be advised of the expected termination date for maternity leave. Subsequently, the superintendent asked petitioner to report for an examination by the school physician on December 19 "in order to determine any disability for sick leave which you have requested." Hynes failed to keep the appointment because on that date at 5:20 a.m. she delivered her child.

On March 27, 1979 the superintendent advised Hynes that her application for maternity leave had been granted through June 30, 1979, but that her application for sick leave was denied "since you did not provide sufficient evidence of disability and did not accede to our request to be examined by a board named physician." Hynes then explained the reason for not having kept the appointment with the school doctor. The superintendent responded that further consideration of her claim for sick leave would be given if her doctor certified (1) the actual date when the claimed disability or illness started, (2) the nature of the illness or disability, (3) whether such illness or disability prevented the performance of duties as a teacher during the time in question, (4) the treatment prescribed, and (5) the exact date of termination of such illness or disability. However, the certifications requested were not furnished.

When Hynes failed to provide the additional certifications, her application for sick leave was rejected. On her appeal to the Commissioner of Education the matter was submitted to an Administrative Law Judge (ALJ). Relying on the ALJ's opinion and findings, the Commissioner held that Hynes could use her accumulated sick leave credits for prenatal disability from December 1, 1978 to December 27, 1978, the anticipated date of her confinement, but that she would have to present an additional medical certificate for the period of postnatal disability.

The local board appealed to the State Board which endeavored in its decision "to clarify the existing law for the future guidance of local boards." The State Board followed the Commissioner's earlier pronouncements in the *Cinnaminson* case.[1] The State Board said:

> To further elucidate the subject, we believe that in pregnancy cases, if the teaching staff member is requesting no sick leave before the ninth month of pregnancy, the physician need only certify the date that birth is expected. The

---

[1]*Cinnaminson Tp. Educ. Bd. v. Silver,* 1976 *School Law Dec.* 738. This decision was affirmed by order of the State Board of Education under date of April 4, 1979.

presumption will then arise that disability begins one month prior to the anticipated delivery. Likewise, if the teacher requests no sick leave beyond one month following delivery, the physician need only certify the date of the actual birth; the presumption of disability will cover the following month. If, however, the staff member wants to take sick leave either more than one month before anticipated delivery or more than one month after the birth, the Board may require a further physician's certificate as to the actual dates that the disability began or terminated, as the case may be. On the other hand, if the teacher continues to work during her ninth month of pregnancy (and the Board's physician does not find her unfit), the presumption of disability for that month is overcome *pro tanto.*

Thus, the State Board held that Hynes was entitled to sick leave for a period of postnatal disability ending on January 19, 1979, but that she would have to provide a doctor's certificate if she wished to claim sick leave for the period beyond one month postpartum, namely, from January 19 to January 24, 1979.

Sick leave with full pay for a minimum of ten school days per year, subject to accumulation, is provided by statute for all persons regularly employed by a board of education. *N.J.S.A.* 18A:30–2 and –3. Sick leave is defined as absence from work for "personal disability due to illness or injury" or exclusion on account of a contagious disease. *N.J.S.A.* 18A:30–1. Pregnancy is neither an "injury or illness," and so disability due to pregnancy is not within the literal terms of *N.J.S.A.* 18A:30–1. *See Castellano v. Linden Educ. Bd.,* 158 *N.J.Super.* 350, 360–362 (App.Div.1978), aff'd 79 *N.J.* 407, 410 (1979). However, *Castellano* held that disallowing sick leave for disability caused by pregnancy discriminates against women, since sick leave is available for disabilities due to illness or injury.

A woman giving birth to a child becomes physically disabled and unable to attend to her teaching duties for that reason. It is discriminatory not to allow her to use her accumulated sick leave during that period of temporary disability, when it can be used for any other period of absence due to physical disability. [79 *N.J.* at 412–413.]

Thus, the provisions of *N.J.S.A.* 18A:30–1 *et seq.* govern sick leave for disability due to pregnancy as well as to other causes.

The State Board's determination establishes as a matter of policy a presumptive period of disability of four weeks before the projected delivery date and a like period following delivery.

We are not told whether this decision is based upon common knowledge that can be judicially noticed, see *Evid.R.* 9(1),[2] or was fashioned after a provision that was once part of our Temporary Disability Benefits Law, *N.J.S.A.* 43:21–29. Before its amendment by *L.*1980, *c.*90, § 13, that statute provided: "For the purposes of this act, pregnancy may be deemed to be a sickness during the four weeks immediately preceding the expected birth of a child and the four weeks immediately following the termination of the pregnancy." This provision, however, was deleted in 1980, not long before the State Board's decision in this case. The Attorney General recommended the deletion, not because the presumption of disability for the period specified is unjustified but rather because the provision "restrict[ed] benefit eligibility for disability associated with normal pregnancy . . ." to eight weeks while "all other claimants . . . [may] collect benefits for up to 26 weeks." *See N.J. Att'y Gen. Formal Op.* 2–1979, 103 *N.J.L.J.* 198 (March 8, 1979). Thereafter, the Commissioner of Labor and Industry announced that benefits would not be limited to the four-week periods before and after the delivery date. "Pregnancy Treated Like Other Temporary Disabilities," 103 *N.J.L.J.* 435 (May 10, 1979).

*N.J.S.A.* 18A:30–4 provides:

> In case of sick leave claimed, a board of education may require a physician's certificate to be filed with the secretary of the board of education in order to obtain sick leave.

---

[2]There was no hearing in this case and no expert opinion in documentary form presented on the issue. A better record might have been developed had the agency followed rulemaking procedures provided by the Administrative Practice and Procedure Act, *N.J.S.A.* 52:14B–1 *et seq.* This would have afforded "all interested persons reasonable opportunity to submit data, views or arguments, orally or in writing" for full agency consideration. *N.J.S.A.* 52:14B–4. As the Supreme Court admonished in *R.H. Macy & Co. v. N.J.Tax. Div.,* 41 *N.J.* 3, 4 (1963), administrative agencies "shall always be alert to their rule-making powers . . . to avoid the suggested burdens of individual *quasi-*judicial determinations." *But see In re Uniform Admin. Proc. Rules,* 90 *N.J.* 85, 93 (1982), on rulemaking by adjudication of individual disputes. The State Board of Education is cloaked with general rulemaking power. *N.J.S.A.* 18A:4–15 and –16.

The statute does not say what the physician's certificate must contain if one is required. In this case the State Board has established a presumption of disability based upon a physician's certification of expected and actual delivery dates. The local board demanded a certificate specifying the nature of the disability and other related information.

The State Board has ruled, in effect, that a teacher need not work during the presumptive periods of disability unless she desires to do so. The teacher's decision to work into the ninth month would be binding on the local board of education. *Compare de Laurier v. San Diego Unified School Dist.*, 588 *F.2d* 674 (9 Cir.1978), where the court found substantial evidence to support the trial judge's conclusion that business necessity justified prohibiting a pregnant teacher from teaching during the ninth month. The trial judge had found that administrative and educational objectives were furthered by the rule in part because the ability of women to perform teaching duties in the ninth month is impaired by reduced mobility, imbalance, and increased fatigue, awkwardness and irritability. The teacher sought to work until the onset of labor and had presented medical experts who testified that "a normally pregnant woman should experience no particular handicap in her work." *Id.* at 680. *See also Cleveland Bd. of Educ. v. LaFleur*, 414 *U.S.* 632, 642, 94 *S.Ct.* 791, 797, 39 *L.Ed.2d* 52 (1976), where the Court invalidated mandatory rules requiring pregnant teachers to discontinue work at specific periods before the delivery date, even assuming some incapacity to perform teaching duties during the later states of pregnancy. The Court also invalidated a rule that prohibited a teacher from returning to work until her child was three months of age.

Under contract with the United States Department of Health, Education and Welfare, the Public Health Service, and the National Institute for Occupational Safety and Health, the American College of Obstetricians and Gynecologists issued a research report in 1977 entitled "Guidelines on Pregnancy and

Work." That report states that, subject to "infrequent excep-
tions," the following "caveat" applies:

> The normal woman with an uncomplicated pregnancy and a normal fetus in a
> job that presents no greater potential hazards than those encountered in normal
> daily life in the community may continue to work without interruption until the
> onset of labor and may resume working several weeks after an uncomplicated
> delivery. [*Id.* at 12.]

We cannot conclude that the demands of teaching are no greater
than those encountered in normal daily life. Furthermore, in a
previous "Statement of Policy on Pregnancy Disability" (1974),
the American College of Obstetricians and Gynecologists said:

> In an uncomplicated pregnancy, disability occurs near the termination of
> pregnancy, during labor, delivery and the puerperium. The process of labor, and
> puerperium is disabling in itself. *The usual duration of such disability is
> approximately six to eight weeks.* [Emphasis added.]

We conclude that the policy determination of the State Board
establishing a presumptive period of disability of four weeks
before the expected birth and four weeks following the actual
date of birth is not an unreasonable exercise of administrative
authority to expedite the administration of disability benefits.
*See Campbell v. Civil Service Dep't,* 39 *N.J.* 556, 562 (1963).
"Sick leave benefits are intended to alleviate economic losses
resulting from inability to work because of disability. This
salutary purpose would not be furthered by excluding pregnan-
cy-related absences merely because the condition may not be an
illness by strict definition." *Castellano v. Linden Educ. Bd.,
supra,* 158 *N.J.Super.* at 362. It is not unreasonable to apply a
presumption of disability in pregnancy cases for such limited
periods. Thus, medical certification of the pregnancy establish-
ing an expected date of child birth and certification of the
actual date of birth should be sufficient to satisfy the statute
and to trigger the presumptive periods established by the State
Board. A teacher who wants to work during those periods
should be allowed to do so. And a teacher who applies for sick
leave for a longer period of time should be required to provide
medical certification of the specific nature of her disability.

Accordingly, we affirm the award of sick leave ordered by the State Board for the period of December 1, 1978 to January 19, 1979. If Hynes desires to pursue her claim for sick leave for the remaining five days up to January 24, 1979, she may do so by submitting additional medical certification to the local board specifying the nature of her disability during that period.

Affirmed.

BOTTER, P.J.A.D., concurring in result only and dissenting.

I dissent from the rule of law established by the majority in this case although on the particular facts I concur in the result. Our difference results from contrary views about equating pregnancy with disability for fixed periods of time.

The issue is whether the State Board of Education ("State Board") can prevent a local board of education from requiring a pregnant teacher to furnish a medical certificate of disability pursuant to statute, *N.J.S.A.* 18A:30–4,[1] as in other cases when sick leave is requested.[2] The error in the State Board's ruling, affirmed by the majority, is in equating pregnancy with disability for given periods of time, whether or not a woman is in fact able to work. I agree that it does not seem unreasonable for a woman to request sick leave for the four-week periods before and after giving birth. But I see no reason why pregnant teachers should be treated differently from other female and male employees who seek sick leave and are required to furnish appropriate medical certificates to support the request. A certificate that merely says a teacher is pregnant does not certify that she is unable to work. Pregnancy is a natural condition, not an illness, although many physical symptoms associated with

---

[1]The statute is quoted in the majority's opinion. It says, "a board of education may require a physician's certificate ... in order to obtain sick leave."

[2]No issue is raised on this appeal concerning maternity leave. Apparently the existing agreement with employees provided for maternity leave without pay for one year, with an extension on request of up to an additional year.

pregnancy may cause disability. *See Castellano v. Linden Educ. Bd.,* 158 *N.J.Super.* 350, 362 (App.Div.1978), aff'd and modified, 79 *N.J.* 407 (1979). But pregnant women are not necessarily disabled for a given period of time except during delivery. Many teachers can and do work in their final month of pregnancy. *See de Laurier v. San Diego Unified School Dist.,* 588 *F.*2d 674, 680 (9 Cir.1978). Pregnant employees ought to be treated the same as other employees; they ought not be given preferential treatment or discriminatory treatment. I would hold that for reasons of administrative efficiency and economy, local boards may utilize a presumption of disability for the four-week periods before and after delivery if they choose. *See de Laurier v. San Diego Unified School Dist., supra.* However, the State Board cannot compel local boards of education to accept a medical certificate of pregnancy as the equivalent of a certificate of disability.

Lacking a record of expert evidence on the issue, we turn to the literature to learn what we may not know from common knowledge of the relationship between pregnancy and disability. Because all women do not react alike during pregnancy and puerperium, fixed rules prohibiting teachers from working for specific time periods before and after giving birth were invalidated in *Cleveland Bd. of Educ. v. LaFleur,* 414 *U.S.* 632, 94 *S.Ct.* 791, 39 *L.Ed.*2d 52 (1974). The Court there observed:

While the medical experts in these cases differed on many points, they unanimously agreed on one—the ability of any particular pregnant woman to continue at work past any fixed time in her pregnancy is very much an individual matter. [414 *U.S.* at 645, 94 *S.Ct.* at 799, 39 *L.Ed.*2d at 63]

The foregoing statement is consistent with a "Statement on Policy and Pregnancy Disability" issued by the American College of Obstetricians and Gynecologists (1974). The policy statement recognized that pregnant women "have a variable degree of disability, on an individual basis," but concludes that "[t]he onset, termination and cause of the disability as related to pregnancy can only be determined by a physician." Indeed,

doctors may also differ in their opinions on the extent to which a woman should work before and after giving birth.[3]

Since disabilities vary according to the woman involved, a local board of education has the right under *N.J.S.A.* 18A:30–4 to demand a physician's certificate specifying the need for sick leave as in other cases. Nevertheless, boards of education in their discretion may find it administratively efficient to accept the presumption of disability for the periods specified by the State Board. It may be necessary to make arrangements in advance for a substitute teacher. Moreover, attempting to refute such disability claims may be costly and impractical. Often physicians would be certifying to disabilities based largely on subjective symptoms reported by their patients. The ability to return to work within a reasonable time after illness or injury frequently depends upon subjective feelings that an independent doctor could not confirm or refute by examination. As with other sick leaves, the system depends largely on the good faith and integrity of workers and their doctors. There is no reason, therefore, to impose undue burdens of substantiation for administrative purposes. At the same time an employing agency has the right to require an employee to furnish a medical certificate of disability in support of the request for sick leave. As stated above, a certificate of pregnancy is not a certificate of disability.

In the case at hand the teacher's doctor certified that she would be "able to continue working only until" November 30, approximately one month before the anticipated delivery date. The doctor gave no reason except that Hynes was pregnant. The Bloomfield Board apparently was not satisfied and would not approve the prenatal leave without more proof. Hynes did

---

[3]Testimony before the House Education and Labor Committee concerning the Pregnancy Discrimination Act of 1978, 42 *U.S.C.* § 2000e(k), showed that barring medical complications, "in 95 percent of the cases, the time lost from work due to pregnancy [including childbirth and pregnancy related medical conditions] is 6 weeks or less. . . ." *H.R.Rep. No. 948, 95th Cong.,* 2d Sess. 5, reprinted in 1978 *U.S.Code Cong. & Admin.News* 4749, 4753.

not say she could not furnish a more detailed certificate; she simply asserted her right to sick leave without doing so. The State Board's decision upheld her position.

The Commissioner of Education and the Administrative Law Judge held that the doctor's pre-confinement certificates attesting that Hynes was pregnant and would be able to work only until November 30, together with the Bloomfield Board's knowledge that she actually gave birth on December 19, 1978 constituted "reasonable compliance with *N.J.S.A.* 18A:30–4" for the prenatal period. The State Board also ruled that the certificates furnished before the delivery date "clearly established" the right to sick leave beginning December 1 up to the date of birth on December 19, 1978. The State Board held, however, that a doctor's certification of the date of birth would be sufficient to support a claim for sick leave for one month thereafter and that the certificate of postnatal disability called for by the Commissioner was not needed for that period. Pursuant to leave granted by the Commissioner, Hynes obtained a medical certificate from her treating doctor in May 1980 certifying the date of delivery and stating that Hynes "was unable to return to work until January 24, 1979."

Appellant has challenged the sufficiency of the medical certificates in this case contending that they do not adequately describe the nature of Hynes' disability. I would hold that the certificates submitted by Hynes were sufficient affirmations of her disability for the four-week periods before the anticipated confinement date and after actual delivery. Because limited periods of disability may reasonably be predicted in pregnancy cases, medical certificates stating merely that a patient should not or cannot work for those periods ought to be accepted as presumptively valid. A teacher who can work during those periods should be allowed to do so. And a teacher who applies for sick leave longer than those periods may be required to furnish a medical certificate that justifies the request and more specifically describes the nature of the disability.

Accordingly, I would modify the State Board's rule by holding that it may serve as a guideline for local boards that find it administratively efficient to follow. But local boards cannot be prevented from requiring a medical certificate stating at least that the pregnant employee cannot or should not work during all or a portion of the four-week periods in question, according to her doctor's judgment. Since the medical certificates in this case complied with these requirements for the period up to January 19, 1979, I would affirm the award of sick leave to that date. I concur also in the majority's requirement of a medical certificate which more specifically describes Hynes' disability during the period from January 19, 1979 to January 24, 1979, after which her maternity leave commenced. *See* footnote 2 above.