MANSMANN, Circuit Judge,
dissenting.
I.
I agree with the majority that our role is to determine whether the New Jersey Supreme Court would adopt for the LAD the Supreme Court’s analysis in St. Mary’s Honor Center v. Hicks, — U.S. -, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Commissioner v. Estate of Bosch, 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1966); McKenna v. Ortho Pharmaceutical Corp., 622 F.2d 657, 661-62 (3d Cir.1980), cert. denied, 449 U.S. 976, 101 S.Ct. 387, 66 L.Ed.2d 237 (1980). It is without doubt, as the majority holds, that were the New Jersey Supreme Court to apply the Hicks rule of law to the LAD, this case would require a new trial because the jury instructions did not provide the Hicks framework.[1] See Majority op. at 826. It is in the majority’s prediction of what the New Jersey Supreme Court would hold that we part ways, and because I believe it will not adopt the Hicks analysis for the LAD, I respectfully dissent.[2]
*838 We have, of course, previously articulated the proper standard to be used in predicting state law:
In attempting to forecast state law we “must consider relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other rehable data tending convincingly to show how the highest court in the state would decide the issue at hand.”
McGowan v. University of Scranton, 759 F.2d 287, 291 (3d Cir.1985) (quoting McKenna, 622 F.2d at 663). See also Blum v. Witco Chemical Corp., 829 F.2d 367, 376 (3d Cir.1987).
II.
Historically, as the majority correctly points out, Majority op. at 827-28, New Jersey has generally followed Title VII federal precedent in interpreting the LAD. For a list of such cases, see Grigoletti v. Ortho Pharmaceutical Corp., 118 N.J. 89, 570 A.2d 903, 907 (1990). Nonetheless, as the majority also agrees, Majority op. at 828, New Jersey is not wedded to federal precedent and applies it selectively. The New Jersey Supreme Court has stated:
In construing the terms of the LAD, the court has frequently looked to federal precedent governing Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. [§]§ 2000e-2000e-17 (“Title VIP), as “a key source of interpretative authority.” Although the “substantive and procedural standards that we have developed under the State’s LAD have been markedly influenced by the federal experience,” we have “applied the Title VII standards with flexibility” and “have not hesitated to depart” from federal precedent “if a rigid application of its standards is inappropriate under the circumstances.”
Lehmann v. Toys ‘R’ Us, Inc., 132 N.J. 587, 626 A.2d 445, 452 (1993) (citations to quotations omitted). See also, Grigoletti, 570 A.2d at 907 (“[T]he court has never embraced the McDonnell Douglas test literally, invariably or inflexibly.”); Erickson v. Marsh & Mclennan Co., 117 N.J. 539, 569 A.2d 793, 799 (1990) (“We have recognized, however, that the criteria announced in Peper, Goodman, and Anderson provide only a general framework for analyzing unlawful discrimination claims and must be modified where appropriate.”); Clowes v. Terminix Intern., Inc., 109 N.J. 575, 538 A.2d 794, 805 (1988) (“Under [certain] circumstances the McDonnell Douglas analysis should be used only to the extent that its application is appropriate.”); Peper v. Princeton University Board of Trustees, 77 N.J. 55, 389 A.2d 465, 479 (1978) (“While we commend the McDonnell Douglas standards to our trial courts as a starting point in actions brought under the Law Against Discrimination or any other State proscription against discrimination, it must be emphasized that these tests are to be used only where and to the extent that their application is appropriate”).
It is especially relevant that whenever federal precedent establishes a standard that makes it more difficult for the plaintiff to make its case, the New Jersey Supreme Court departs. Lehmann, 626 A.2d at 453 (denouncing the Andrews test from this circuit and creating a new test for sexual harassment under the LAD); Montells v. Haynes, 133 N.J. 282, 627 A.2d 654, 661 (1993) (disregarding United States Supreme Court caselaw questioning prospective application of a new rule of law in a sexual harassment case under the New Jersey LAD); Grigoletti, 570 A.2d at 913 (adopting the EPA standard, which is more burdensome on the defendant, rather than the Title VII standard for gender discrimination claims); Anderson v. Exxon Co., 89 N.J. 483, 446 A.2d 486, 494 (1982) (declining to follow the allocation of the burdens of proof established in McDonnell Douglas to LAD claims for handicap discrimination); Castellano v. Linden Board of Education, 158 N.J.Super. 350, 386 A.2d 396, 402 (App.Div.1978), mod. on other grounds, 79 N.J. 407, 400 A.2d 1182 (1979) (holding that pregnancy discrimination violated the LAD contrary to the Supreme Court’s decision in Gilbert).[3]
*839 In Castellano v. Linden Board of Education, 158 N.J.Super. 350, 386 A.2d 396 (App.Div.1978), the New Jersey Superior Court addressed whether requiring a pregnant female teacher to take a mandatory maternity leave and refusing to permit her to utilize accumulated sick leave during her childbirth absence constituted impermissible gender discrimination. Id. at 354, 386 A.2d 396. The United States Supreme Court, pri- or to the decision in Castellano, held that a disability plan provided by an employer for all its employees, which paid weekly non-oceupational sickness and accident benefits, but excluded from coverage disabilities arising from pregnancy, did not violate Title VII of the Civil Rights Act of 1964. General Electric Co. v. Gilbert, 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976). See also Nashville Gas Co. v. Satty, 434 U.S. 136, 98 S.Ct. 347, 54 L.Ed.2d 356 (1977) (holding that an employer’s policy of compensating employees for limited periods of time during which the employee missed work because of a non-job related illness or disability, but excluding sick leave paid to pregnant employees, was legally indistinguishable from the disability insurance program in Gilbert ).[4] In response to Gilbert and Satty the New Jersey Superi- or Court stated:
Clearly, we are not bound by those decisions in construing our own statute, even though it relates essentially to the same subject matter as the parallel federal civil rights law. We are free to apply our own concept of that which is right and proper in the circumstances.
Id. 386 A.2d at 401 (citing Oakwood at Madison, Inc. v. Madison Tp., 72 N.J. 481, 371 A.2d 1192 (1977); State v. Johnson, 68 N.J. 349, 346 A.2d 66 (1975)). Cf. Robinson v. Cahill, 62 N.J. 473, 303 A.2d 273 (1973), cert. denied, 414 U.S. 976, 94 S.Ct. 292, 38 L.Ed.2d 219 (1973).
There have also been other areas where the New Jersey courts have departed from federal precedent. In Lehmann v. Toys “R” Us, Inc., 626 A.2d 445 (N.J.1993), the New Jersey Supreme Court did not adopt the test we set forth in Andrews v. City of Philadelphia, 895 F.2d 1469 (3d Cir.1990), for a sexual harassment claim under the LAD. There we set forth a five factor test to determine an actionable claim for sexual harassment under Title VII, creating a test with both subjective and objective standards. Andrews, 895 F.2d at 1482-83. The New Jersey Supreme Court disavowed the Andrews, test and found its own elements of a hostile work environment for a sexual harassment cause of action under the LAD. Lehmann, 626 A.2d at 451-54. The court stated:
We find that the standards expressed in the EEOC Guidelines, while helpful, are *840 insufficiently structured to define the cause of action at this stage in the development of the law. However, we agree with the dissent below that the Third Circuit’s Andrews test employed by the majority below contains too many analytical difficulties and deficiencies to be usefully employed here.
Rather than risking confusion by engraft-ing major revisions to the Andrews test, we announce a new test in the hope of creating a standard that both employees and employers will be able to understand and one that employers can realistically enforce. We cannot overstate the importance we place on a test that allows employees to know their rights in a given set of circumstances and that allows employers to set policies and procedures that comply with that test.
Id. at 453.[5]
III.
In Lehmann, the New Jersey Supreme Court also discussed the legislative intent and public policy behind the New Jersey LAD:
The New Jersey law against discrimination was first enacted in 1945. Its purpose is “nothing less than the eradication ‘of the cancer of discrimination.’ ” The opportunity to obtain employment “is recognized as and declared to be a civil right.” N.J.S.A. 10:5-4.
The LAD was enacted to protect not only the civil rights of individual aggrieved employees but also to protect the public’s strong interest in a discrimination-free workplace. Freedom from discrimination is one of the fundamental principles of our society. Discrimination based on gender is “peculiarly repugnant in a society which prides itself on judging each individual by his or her merits.”
Id. at 451-52 (case citations to quotations omitted). See also Shaner v. Horizon Bancorp, 116 N.J. 433, 561 A.2d 1130, 1131-32 (1989); Anderson v. Exxon Co., 446 A.2d 486, 490 (N.J.1982) (“Our court has repeatedly emphasized the strong public policy of New Jersey against employment discrimination.”). In Fuchilla v. Layman, the New Jersey Supreme Court engaged in a similar discussion of the public policy in New Jersey:
We begin by recognizing that the clear public policy of this state is to abolish discrimination in the workplace. Indeed, the overarching goal of the law is nothing less than the eradication “of the cancer of discrimination.” Jackson v. Concord Co., 54 N.J. 113, 124 [253 A.2d 793] (1969). As the Legislature has declared, “discrimination threatens not only the rights and proper privileges of the inhabitants of the State but menaces the institutions and functions of a free democratic state.” N.J.S.A. 10:5-3. The day is long past when any employee need endure discrimination because of his or her race, religion, national origin, or gender. Employment discrimination is not just a matter between employer and employee. The public interest in a discrimination-free workplace infuses the inquiry. David v. Vesta Co., 45 N.J. 301, 327 [212 A.2d 345] (1965).
Fuchilla v. Layman, 109 N.J. 319, 537 A.2d 652, 660 (1988), cert. denied, University of Medicine and Dentistry of New Jersey v. Fuchilla, 488 U.S. 826, 109 S.Ct. 75, 102 L.Ed.2d 51 (1988).[6] These passages relied in part on the New Jersey Legislature’s declaration that employment in New Jersey shall be free from discrimination. N.J.Stat.Ann. 10:5-3, 5-4. For the full text, see Majority *841 op. at 827 n. 6. I find this proclamation overwhelmingly persuasive.
I am cognizant of other New Jersey case-law stating the contrary:
In a sex discrimination case arising under the N.J. L.A.D., our supreme court held that the test for prima facie showing was the same as that used in federal cases arising under Title VII of the Civil Rights Act of 1964. Because the provisions of the ADEA were modeled after Title VII and are nearly identical in wording and purpose, Title VII standards are applied to ADEA cases. We thus conclude, as did the judge below, that plaintiffs’ contentions should appropriately be analyzed by examination of federal cases arising under Title VII and the ADEA
Giammarino v. Trenton Bd. of Educ., 203 N.J.Super. 356, 497 A.2d 199, 202 (App.Div.1985), cert. denied, 102 N.J. 336, 508 A.2d 212 (1985), cert. denied, 475 U.S. 1141, 106 S.Ct. 1791, 90 L.Ed.2d 337 (1986) (citations omitted). However, in that case the court followed Supreme Court precedent because, at the time, the Supreme Court was consistent with New Jersey public policy. This does not lead to the conclusion that New Jersey will continue to follow the Supreme Court. The above passage was correct when stated, but is now doubtful. Cf. Clowes v. Terminix Intern., Inc., 109 N.J. 575, 538 A.2d 794, 802 (1988) (holding that alcoholism is a handicap under the New Jersey LAD: ‘We begin our analysis from the perspective that because the [LAD] is remedial social legislation, it is deserving of a liberal construction.”).
IV.
The major premise of the majority’s opinion is that the New Jersey rule regarding presumptions parallels the federal rule of presumptions upon which Hicks is based. Majority op. at 828-30. I am not persuaded that the New Jersey rule so closely resembles the federal rule that it justifies serving as the basis of this decision, particularly in light of the liberal anti-discrimination policy adopted by both the New Jersey Legislature and the New Jersey Supreme Court.
The Federal Rule of Evidence on presumptions states:
In all civil actions and proceedings not otherwise provided for by Act of Congress or by these rules, a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof in the sense of the risk of nonpersuasion, which remains throughout the trial upon the party on whom it was originally cast.
Fed.R.Evid. 301. The New Jersey rule on presumptions states:
Except as otherwise provided in Rule 303 or by other law, a presumption discharges the burden of producing evidence as to a fact (the presumed fact) when another fact (the basic fact) has been established.
If evidence is introduced tending to disprove the presumed fact, the issue shall be submitted to the trier of fact for determination unless the evidence is such that reasonable persons would not differ as to the existence or nonexistence of the presumed fact. If no evidence tending to disprove the presumed fact is presented, the presumed' fact shall be deemed established if the basic fact is found or otherwise established. The burden of persuasion as to the proof or disproof of the presumed fact does not shift to the party against whom the presumption is directed unless otherwise required by law. Nothing in this rule shall preclude the judge from commenting on inferences that may be drawn from the evidence.
N.J.R.Evid. 301. A comparison of the two rules reveals that the federal rule “bursts the bubble” of the presumption, while the New Jersey rule creates an issue for the jury. Athough the New Jersey rule does not necessarily follow Morgan’s theory of presumptions,[7] that the party resisting the presumption must introduce sufficient evidence to overcome the presumption, it is certainly not an enactment of Thayer’s “bursting bubble”[8] *842 —it falls somewhere along the continuum between the two. One commentator has placed the New Jersey rule closer to Morgan’s theory than Thayer’s because in New Jersey the evidence supporting the presumption or possibly even the presumption itself remains. Ralph N. Del Deo & John H. Klock, 2B New Jersey Practice Ch. 3 at 334 (1987).[9] Although the author was commenting on the former New Jersey rule on presumptions, Rule 14, a comparison between Rule 14 and Rule 301 does not reveal any substantial change. The text of the first sentence of the second paragraph of Rule 301 is essentially the same as Rule 14. The added language does not change the effect of the rule. Rule 14 stated:
Except as provided by Rule 15, if evidence to the contrary of a presumed fact is offered, the existence or nonexistence of such fact shall be for the trier of fact, unless the evidence is such that the minds of reasonable men would not differ as to the existence or nonexistence of the presumed fact.
See also Majority op. at 830 n. 10. Rule 14 and presently effective Rule 301 do not follow the previous rule, which was interpreted to be an enactment of Thayer’s theory. In Dwyer v. Ford Motor Co., 36 N.J. 487, 178 A.2d 161, 171 (1962), the court held that a presumption of fact is emptied of all probative force and disappears from the case upon introduction of any proof to the contrary. Cf. McGlynn v. Newark Parking Auth., 86 N.J. 551, 432 A.2d 99, 105 (1981). When Rule 14 was enacted, the Commission Note accompanying the new rule explained it this way:
This rule changes existing law. The rule has been that if contrary evidence was introduced, the presumption was gone.... Under this rule a fact issue remains, with no distinction between “logical” and “artificial” presumptions. The effect of the rule is that (a) if there is no evidence to contradict either the underlying fact or the assumed fact, the assumed fact must be taken to exist and the jury should be so instructed ...; and (b) if there is evidence to contradict either the underlying fact or the assumed fact ..., the jury is to determine the existence of the assumed fact as on- any other contest issue.
Ralph N. Del Deo & John H. Klock, 2B New Jersey Practice Ch. 3 at 334 (1987).
Although this interpretation has not been formally adopted by the New Jersey Supreme Court, its existence demonstrates that reasonable minds can differ on the issue. That being the case, I cannot conclude that the New Jersey Supreme Court would follow the Supreme Court’s analysis in Hicks, particularly in light of New Jersey’s public policy to eradicate discrimination from the workplace. At least one other state supreme court has chosen not follow Hicks because it has interpreted its own rule of evidence on presumptions differently. Schweigert v. Provident Life Ins. Co., 503 N.W.2d 225 (N.D.1992).
V.
Because New Jersey is clearly dedicated to preserving a low threshold for establishing a civil rights violation with regard to employment discrimination,[10] I would hold that the *843 New Jersey Supreme Court will not adopt for the LAD the Supreme Court’s analysis in Hicks.

. Hicks settled conflicting decisions found among the courts of appeals regarding whether the jury's finding of employer pretext mandates the finding of illegal discrimination in Title VII cases. Hicks, — U.S. at -, 113 S.Ct. at 2750. The burdens of production and the order for the presentation of proof were set forth mainly in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and then revisited in Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Contrary to what we stated in Duffy v. Wheeling Pittsburgh Steel Corp., 738 F.2d 1393, 1395-96 (3d Cir.1984), Hicks states that after a plaintiff makes a prima facie case of discrimination and the defendant rebuts that with legitimate non-discriminatoiy reasons, the presumption raised by the prima facie case drops from the case, and the plaintiff now must show that the defendant's proffered reasons were not the true reasons for the employment decision and that the discriminating characteristic was. Hicks, -U.S. at -, 113 S.Ct. at 2747. No longer is it sufficient for the plaintiff to show that the defendant's proffered reasons were pretextual.
Pacific Rail argues, first, that because the New Jersey courts have consistently applied the principles and analysis developed by the federal courts in Title VII age and sex discrimination claims, they would continue to do so in this context. The error in this reasoning is simply that it fails to consider that a new interpretation of the burden of proof has been established. Second, Pacific Rail suggests that, because the plaintiffs originally argued that federal precedent should apply to this case, they are estopped now from changing their position before this court. Such a contention is meritless, for again it fails to consider that a new rule regarding the various burdens has been established in the interim. See Majority op. at 826 n. 5.

. I join the court's analysis in Part IV.

. Similarly, the district courts in New Jersey have also recognized the independence of New Jersey courts in interpreting the LAD.
There is little reason to believe that New Jersey courts will exhibit slavish devotion to federal law in interpreting the NJLAD. Quite the con- *839 traiy, in construing New Jersey antidiscrimi-nation law, enacted nearly twenty years before the analogous federal statute prohibiting employment discrimination, see, Shaner v. Horizon Bancorp., 116 N.J. 433, 436, 561 A.2d 1130 (1989); Nolan v. Otis Elevator Co., 102 N.J. 30, 48, 505 A.2d 580, cert. denied, 479 U.S. 820, 107 S.Ct. 84, 93 L.Ed.2d 38 (1986), New Jersey courts have not considered themselves bound , by federal caselaw, "even though [the NJLAD] relates essentially to the same subject matter as parallel federal civil rights law. We are free to apply our own concept of that which is right and proper in the circumstances.” Castellano v. Linden Board of Education, 158 N.J.Super. 350, 360, 386 A.2d 396 (App.Div.1978) (holding that pregnancy discrimination violated NJLAD despite contrary United States Supreme Court precedent), modified on other grounds, 79 N.J. 407, 400 A.2d 1182 (1979). Moreover, “mindful of the clear and positive policy of our state against discrimination,” New Jersey courts have consistently held that "[ejffectuation of that mandate calls for liberal interpretation of any legislative enactment designed to implement it.” Castellano, 158 N.J.Super. at 361, 386 A.2d 396.
Carrington v. RCA Global Communications, Inc., 762 F.Supp. 632, 644 (D.N.J.1991). See also Abrams v. Lightolier, Inc., 841 F.Supp. 584, 590 (D.N.J.1994) ("This court is not persuaded that the New Jersey State Supreme Court would disavow the standard enunciated in Slohoda [v. United Parcel Service, Inc., 207 N.J.Super. 145, 504 A.2d 53 (App.Div.1986)] to find that the NJLAD warrants application of the ‘sole motivating factor' test [announced in Griffiths v. CIGNA Corp., 988 F.2d 457 (3d Cir.1993)] in pretext cases.”); United States v. Board of Educ. of the Township of Piscataway, 798 F.Supp. 1093, 1099 (D.N.J.1992) ("[T]here is nothing to indicate that the New Jersey Supreme Court would exhibit a ‘slavish devotion' to federal law.”).

. Notably, on October 31, 1978, Title VII of the Civil Rights Act of 1964 was amended to include pregnancy-based discrimination in its prohibition of sex discrimination. See California Fed. Sav. & Loan Ass'n v. Guerra, 479 U.S. 272, 284-85, 107 S.Ct. 683, 691-92, 93 L.Ed.2d 613 (1987).

. Notably, the United States Supreme Court has recently undertaken to define the elements of a sexual harassment claim under Title VII. Harris v. Forklift Systems, Inc., -U.S. -, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993).

. Additionally, the New Jersey Supreme Court has led the way in furthering the rights of employees in other areas. Shebar v. Sanyo Business Systems Corp., 111 N.J. 276, 544 A.2d 377 (1988) (oral promise of discharge for cause only, even though employment was terminable at will, may be enforceable); Woolley v. Hoffmann-LaRoche, Inc., 99 N.J. 284, 491 A.2d 1257 (1985) (a written implied promise of discharge for cause only, even though employment was terminable at will, may be enforceable); Pierce v. Ortho Pharmaceutical Corp., 84 N.J. 58, 417 A.2d 505 (1980) (adopting a general public policy exception to employment at will recognizing that an at-will employee cannot be discharged for reasons contrary to ppblic policy).

. See generally 9 Wigmore, Evidence § 2493c (Chadboum rev. 1981).

. See generally 9 Wigmore, Evidence § 2490 (Chadbourn rev. 1981).

. The New Jersey Model Jury Charges — Civil (4th ed. 1992) for employment cases supports this interpretation. In the section dealing with retaliation for a discrimination claim — the only section that discusses the effect of the presumption — the model charge cites to Jamison v. Rockaway Township Bd. of Educ., 577 A.2d 177, 182 (N.J.Super.Ct.App.Div.1990) (citing Wrighten v. Metropolitan Hospitals, Inc., 726 F.2d 1346, 1354 (9th Cir.1984)), for the proposition that once the plaintiff proves that the defendant's articulated reason for the alleged discriminatory action is false, a presumption is created that the adverse employment action was the product of improper retaliatory intent and the defendant is required to prove by a preponderance of the evidence that the adverse action would have been taken regardless of retaliatory intent. Model Jury Charges — Civil, Ch. 2 § 22C.

. In sum, the LAD provides a distinctive cause of action arising from unlawful employment practices and unlawful discrimination in employment. The overarching goals of the LAD are not only vindication for aggrieved individuals victimized by discrimination. Protection for other persons similarly situated and the eradication of invidious discrimination in the exercise of civil rights are also paramount concerns of the LAD. The LAD confers broad and extensive remedial powers to fulfill these goals *843 and to counteract the practices and effects of such unlawful practices and discrimination.
Shaner v. Horizon Bancorp, 561 A.2d 1130, 1136 (N.J.1989).